IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED NEUROLOGY, P.A. AND | § | |
| ATHARI REAL ESTATE LTD., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-10-4248 |
| | § | |
| HARTFORD LLOYD'S INSURANCE CO., | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER**

Pending before the Court in the above referenced cause, removed from state court on diversity jurisdiction and arising out of damage to the roofs and interiors of Plaintiffs United Neurology, P.A. and Athari Real Estate Ltd.'s properties located at 2315 and 2321 Southwest Freeway, Harris County, Texas, purportedly during Hurricane Ike and Plaintiffs' subsequent claims under an insurance policy[1] issued by Defendant Hartford Lloyd's Insurance Company ("Hartford"), is Plaintiffs' motion to set aside appraisal award (instrument #40).

**Relevant Law**

Because this case was removed from Texas state court, Texas substantive law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938). Therefore the Court looks to final decisions by the Texas Supreme Court or, where there are none, attempts to determine

---

[1] Insurance Policy Number 61SBAVM1383SC, covering period between August 21, 2008-August 21, 2009 (the "policy").

as best as it can what that high court would decide about an issue by examining decisions of intermediate appellate state courts. *James v. State Farm Mutual Aut. Ins. Co.*, 719 F.3d 447, 451 (5th Cir. 2013), *citing Westlake Petrochems., L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 238 n.5 (5th Cir. 2012), and *Howe ex rel. Howe v. Scarsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000).

Appraisal clauses in property insurance policies in Texas provide a method to resolve disputes regarding the amount of loss for a covered claim. *In re Universal Underwriters of Texas Ins. Co.*, 345 S.W. 3d 404, 406-07 (Tex. 2011). Because the language of a contract is intended to embody the intention of the parties, Texas courts have held that appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable. *TMM Investments, Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 471-72 (5th Cir. 2013). Such clauses are usually binding and enforceable in the absence of fraud, accident or mistake. *State Farm Lloyds v. Johnson*, 290 S.W. 3d 886, 888 (Tex. 2009). *Michels v. Safeco Ins. Co. v. Indiana*. ___ Fed. Appx. ___, 2013 WL 5935067, at *5 (5th Cir. Nov. 6, 2013). There is a strong public policy favoring enforcement of appraisal clauses and every reasonable presumption is indulged to sustain an award; the burden of proof is on the party seeking to avoid such an award. *Michels*, 2013 WL 5935067, at

*5-6.[2]  An award that is substantially in compliance with the
insurance policy is presumptively valid and minor discrepancies in
the appraisal process or award will not invalidate it.  *Id.* at *6,
*citing Providence Lloyds Ins. Co. v. Crystal City I.S.D.* 877 S.W.
2d 872, 875 (Tex. App.--San Antonio 1994, no writ); *TMM*, 730 F.3d
at 472.  An award not in compliance with the policy's requirements
may be disregarded.  *Michels*, 2013 WL 5935067, at *6*.  In addition
to noncompliance with the policy requirements, an appraisal award
will also not be enforced if it was made without authority or was
the result of fraud, accident or mistake.  *TMM*, 730 F.3d at 472,
*citing Crystal City*, 877 S.W. 2d at 875-76.

Generally a standard appraisal clause, such as the one at
issue here, specifies appraisal as a means for resolving the
"amount of loss" for a covered claim and "binds the parties to have
the extent or amount of the loss," i.e., the damages, determined by
the appraisers, while the question of liability for the loss is
left to the court.  *State Farm Lloyds v. Johnson*, 290 S.W. 3d 886,
889 (Tex. 2009).  "The line between liability and damage questions
may not always be clear," however.  *Id.*

In *Johnson*, the insured claimed that her roof had been damaged

---

[2] The effect of an appraisal provision is to estop one party
from contesting the issue of damages in a suit on the insurance
contract, leaving only the question of liability for the court.
*Lundstrom v. United Services Auto. Ass'n-CIC*, 192 S.W. 3d 78, 87
(Tex. App.--Houston [14th Dist.] 2006, pet. denied); *TMM*, 730
F.3d at 472.

by a hailstorm.  The insurance company determined that only the shingles on the ridge of the roof had been damaged by hail (as opposed to some other cause), disagreed about how many shingles were damaged and needed to be replaced, and offered to pay an amount much lower than she had requested, so the claimant invoked the appraisal provision.  State Farm Lloyds argued against appraisal on the grounds that appraisers could not decide causation questions.  The Texas Supreme Court opined that the dispute about how many shingles were damaged and needed to be replaced fell within the scope of appraisal because the amount of the loss, i.e., cost of replacing the shingles (or anything else), depends on both the price and the number of shingles.  The Texas Supreme Court further noted that sometimes replacing only a part of a roof is not reasonable or even possible; the policy at issue in the case stated that the insurer would pay reasonable and necessary costs to repair or replace the damaged property and that repair of replacement is an "amount of loss" issue for the appraisers.  It emphasized, "Causation relates to both liability and damages because it is the connection between them." *Id.* at 891-92.  It observed, "[W]hen different causes are alleged for a single injury to property, causation is a liability question for the courts." *Id.* at 892, *citing Wells v. American States Preferred Ins. Co.*, 919 S.W. 2d 679, 685-86 (Tex. App.--Dallas 1996, writ denied)(where "appraisers assessed foundation damage due to plumbing leaks (a covered peril)

-4-

as '0' but damage due to settling (an excluded peril) as
$22,875.94," the appellate court set aside the appraisal and held
that appraisers could decide the amount of damage, but not what
caused it).  On the other hand, where different kinds of damages
affect different items of property, the appraisers may need to
decide the damage caused by each before a court can determine
liability.  *Id.* at 892, *citing Lundstrom v. United Services
Automobile Ass'n*, 192 S.W. 3d 78, 88 (Tex. App.--Houston [14th
Dist.] 2006, petition denied)(where "appraisers assessed $4,226.19
for damages due to water (a covered peril) but made no finding for
damages due to mold (as to which coverage was disputed)," the
district court upheld, and the appellate court affirmed, the  award
for water damage, but the appellate court found no coverage existed
for the mold damage, rendering that issue moot).  *Id.*  Where
causation would involve dividing the loss due to a covered event
from that of a property's pre-existing wear and tear (a common
occurrence, generally excluded by policies), the Texas Supreme
Court reasoned that if the appraisers could never allocate damages
between the covered and excluded perils, appraisal clauses would be
largely undermined, a result that should be avoided.  *Id.* at 892-
93.  The *Johnson* court commented,

> [A]ppraisers must always consider causation, at least as
> an initial matter.  An appraisal is for damages caused by
> a specific occurrence, not every repair a home might
> need.  When asked to assess hail damage, appraisers look
> only at damage caused by hail; they do not consider leaky
> faucets or remodeling the kitchen . . . . Any appraisal

> necessarily includes some causation element, because
> setting the "amount of loss" requires appraisers to
> decide between damages for which coverage is claimed from
> damages caused by everything else."

*Id.* at 893.   It concluded, "[W]hether the appraisers have gone
beyond the damage questions entrusted to them will depend on the
nature of the damage, the possible causes, the parties' dispute,
and the structure of the appraisal award."   *Id.*   In sum,

> [W]hen an indivisible injury to property may have several
> causes, appraisers can assess the amount of damage and
> leave causation up to the courts.   When divisible losses
> are involved, appraisers can decide the cost to repair
> each without deciding who must pay for it.[3]   When an
> insurer denies coverage, appraisers can still set the
> amount of loss in case the insurer turns out to be wrong.
> And when the parties disagree whether there has been any
> loss at all, nothing prevents the appraisers from finding
> "$0" if that is how much damage they find.

*Id.* a 894.

Recently, in *TMM Investments Ltd. v. Ohio Casualty Ins. Co.*,
730 F.3d 466 (5th Cir. 2013), the Fifth Circuit reversed the
district court's decision to set aside an appraisal award.   In that
case, a hailstorm severely damaged the roof of a shopping center
owned by TMM and insured by Ohio Casualty Insurance Company
("OCIC").   TMM and OCIC disagreed significantly on the estimated
damages, so TMM invoked the appraisal clause.   TMM argued that the
storm damaged the skylights, while OCIC contended that rocks were

---

[3] *Citing Lundstrom*, 192 S.W. 3d at 87-89 ("rejecting argument
that appraisal is barred 'wherever causation factors into the
award,' and affirming appraisal in which appraisers separated
water damage from mold damage").

responsible; TMM maintained that the roof membrane was damaged by the storm, but OCIC insisted that it was damaged because of improper installation.  The district court *inter alia* decided the two appraisers improperly considered causation and coverage issues when they did not include an estimate for damage to the roof membrane and the skylights, and relying on *Wells*, 919 S.W. 2d 679. It concluded that the appraisers exceeded the scope of their authority in part for that reason, set aside the award, and sent the case to trial on causation, liability, and damages.

On appeal, the Fifth Circuit concluded that the appraisers did not exceed their authority when they considered causation issues and that the part of the appraisal award addressing the damaged skylights and roof membrane should not have been set aside.  730 F.3d at 471.  Relying on *Johnson*, 290 S.W. 3d 886 (appraisers do not exceed their authority "when they consider whether the damage was caused by a particular event or was instead the result of non-covered pre-existing perils like wear and tear"), the appellate court in *TMM* determined that the case fell into the second category established by *Johnson*, 290 S.W. 3d at 832, "when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability" because damage occurred to both the roof membrane and the skylights. *TMM*, 730 F.3d at 475. In light of that ruling and coupled with the established rule that courts should use "every

-7-

reasonable presumption to sustain an appraisal award," the Fifth Circuit concluded that *Johnson* mandated reversal of the district court's order setting aside the appraisal award. *TMM*, 730 F.3d at 475.

Under the doctrine of mitigation of damages, when "a party is entitled to the benefits of a contract and can save himself from damages resulting from its breach at a trifling expense or with reasonable exertions, it is his duty to incur such expense and make such exertions; and in such instances he can only charge the party in default with such damages as he could not have prevented with reasonable exertions and expense." *Walker v. Salt Flat Water Co.*, 128 Tex. 140, 143-44, 96 S.W. 2d 231, 232 (Tex. 1936). At trial, the defendant "bears the burden of proving lack of diligence on the part of the Plaintiff, and the amount by which the damages were increased by a failure to mitigate." *Harris County v. Smoker*, 934 S.W. 2d 714, 721 (Tex. App.--Houston [1ˢᵗ Dist.] 1996, writ denied). "[T]he standard is that of ordinary care, i.e, what an ordinary prudent person would have done under the same or similar circumstances." *Hygeia Dairy Co. v. Gonzalez*, 994 S.W. 2d 220, 224 (Tex. App.--San Antonio 1999)(*en banc*), *citing Moulton v. Alamo Ambulance Service*, 414 S.W. 2d 444, 447 (Tex. 1967). Normally mitigation of damages is an issue for the jury at trial. *Id.*

## Key Facts

After Hurricane Ike, Hartford hired HAAG Engineering ("HAAG")

to investigate the extent of TMM's claimed damages, and from HAAG's report Hartford determined that a substantial amount of the damage was not caused by the hurricane.  HAAG found that the roof was in poor condition due to normal wear and tear, that most of the leaks existed prior to the storm and were not created by it, that the structural frame parts were damaged by the force of Ike's winds, that the entry of moisture around windows and doors resulted from inadequate waterproofing for hurricane conditions, that hurricane winds did not damage the decorative brick veneer sections by the windows, and that the damage caused by Ike was restricted to two broken windows, a partly lifted roof edge flashing, separated exterior fascia trim, a torn canvas awning, an advertising sign, and a panel of the brick veneer on the inside that may have been damaged by wind-borne debris.  Hartford issued a partial denial letter to United Neurology, the named insured, on April 16, 2009 along with a check for $5,987.75 for replacement of the sign, which was expressly covered under the policy.

Plaintiff filed this action on September 13, 2010, asserting that Hartford must pay for damage to the entire roofing systems, for damage to the interior ceiling and drywall on both properties, and for loss of rental income at 2315 Southwest Freeway from the date of loss for at least the twelve-month coverage period of the policy.  Hartford states that to its knowledge, Plaintiffs have not made adequate or timely repairs to the properties and the

properties are currently not being used for any commercial purpose.

Hartford invoked the appraisal clause in the policy.[4]

--------

[4] The relevant clause (#40, Ex. 5, endorsement SS 10 11 04 01) provides,

G.  Appraisal

The Appraisal PROPERTY LOSS CONDITION is replaced by the following:

If we and you disagree on the amount of loss (or net income or operating expense as regards Business Income Coverage), either may make written demand for an appraisal of the loss.  In that event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand.  The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction.  Each appraiser will state the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding as to the amount of loss.  Each party will:

1.  Pay its chosen appraiser; and
2.  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

1.  You will retain your right to bring a legal action against us, subject to the provision of the Legal Action Against Use Condition; and
2.  We will still retain our right to deny the claim.

Under Texas law the umpire only has a duty to perform if the parties' two appraisers disagree and submit their differences to him; otherwise the umpire has no authority to act.  *TMM*, 730 F.3d at 472, *citing Fisch v. Transcontinental Ins. Co.*, 356 S.W. 2d 186, 190 (Tex. Civ. App.--Houston 1962)("Since the umpire's power to act is conditioned upon a disagreement between the appraisers and the submission of their differences only to him, we are of the opinion that the award which was signed by only one appraiser and the umpire who had no authority to act, is invalid.").  Here

Plaintiffs designated Lewis O'Leary as their appraiser, Hartford designated Alan Berryhill, and the two appraisers agreed upon the Honorable Caroline Garcia to be the umpire.

Berryhill argued that much of the damage at issue was caused by Plaintiffs' failure to mitigate their damages, while O'Leary contended that mitigation was a liability question beyond the scope of the arbitration. Plaintiffs asked counsel for Hartford via email (#40, Ex. 2) to join in a stipulation that the failure to mitigate was outside the scope of the appraisal. Hartford's attorney responded that "the lawyers should stay out of the appraisal process" and that if the appraisal turns out to be flawed, the award could "be easily remedied by disregarding it later." #40, Ex. 2; *Johnson*, 290 S.W. 3d at 895.

Plaintiffs assert that the umpire indicated that she was considering the mitigation argument when she wrote on February 24, 2013, "These questions I have regarding largely the extent of damage to 2315 as a result of Ike v. lack of mitigation." #40, Ex. 1. On February 28, 2013, Plaintiffs' appraiser, O'Leary, objected to the umpire's considering mitigation and asked the umpire at least to distinguish the amount of damages resulting from the hurricane from the amount the umpire determined was the result of failure to mitigate, so that the award could still be upheld if this Court determined that failure to mitigate was a liability

Haratford's appraiser and the umpire signed the appraisal award.

-11-

issue for the court and the jury.  #40 at p. 3 and Ex. 1.  On March
11, 2013, the appraisers and the umpire interviewed Manny Fahid, a
former manager of maintenance for Plaintiffs, for approximately
forty-five minutes on what steps were and were not taken to
mitigate damages.  #40, Ex. 3, Fahid's Declaration.  On March 22,
2013 the umpire issued, and Berryhill also signed, a final
appraisal award of $54,363.90 for the building at 2315 Southwest
Freeway and $24,250.24 for the building at 2321 Southwest Freeway,
without identifying the amount of reduction for Plaintiffs' failure
to mitigate.  #40, Ex. 4.

On March 29, 2013 Hartford paid the appraisal award amount
minus the policy's deductible.  Plaintiffs have moved to set aside
the appraisal award on the grounds that the umpire and Hartford's
appraiser exceeded their authority.

### Plaintiffs' Motion to Set Aside Appraisal Award )#46)

Plaintiffs first seek to set aside the appraisal award on the
grounds that the umpire and Defendant's appraiser, Alan W.
Berryhill, exceeded their authority by considering Plaintiffs'
failure to mitigate damages and reducing the award accordingly.
They argue that mitigation of damages requires a liability
determination, a consideration both beyond the scope of proper
appraisal under Texas law and in violation of the insurance policy's
appraisal provision, which strictly limited the appraisal to the
finding of the "amount of the loss."  #40, Ex. 5, Policy, Special

Property Coverage Form, p. 20.   Furthermore Texas law prohibits determinations of liability or coverage by the appraisal. *Johnson*, 290 S.W. 3d at 889-92 (Tex. 2009).   Reasonable mitigation is a liability/coverage issue.   Failure to mitigate is an express exclusion under the policy (#40, Ex. 5, Hartford Ins. Policy, Special Property Coverage Form, p. 17), which provides that even if the damage is otherwise a covered loss, it is excluded if

. . .

g.  Neglect

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

Hartford states an instruction on mitigation of damages at trial is appropriate when the negligence complained of merely contributes to or added to the extent of the losses or injuries but had no part in causing the incident in dispute. *Hygeia Dairy Co. v. Gonzalez*, 994 S.W. 2d at 224.   It quotes the instruction on mitigation used in federal courts under such circumstances:

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate--to avoid or minimize those damages.   If you find the defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort.   If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.   You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages.   An injured plaintiff may not sit idly by when

-13-

presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages.  The defendant has the burden of proving the damages which the plaintiff could have mitigated.  In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

Plaintiffs contend that the finder of fact must consider the following facts in determining a proper reduction of damages due to mitigation:  (1) the total amount of the loss; (2) whether some of the damages could have been avoided by a trifling expense or reasonable exertion; (3) whether the plaintiff negligently failed to avoid those damages; and (4) the amount of damages left after subtracting the reasonably avoidable damages.  Regarding these facts, Plaintiffs argue that the appraisal panel is only authorized by the appraisal clause to find the "total amount of the loss," while the second, third and fourth facts relate to liability, which is outside the scope of appraisal and should be left to the court and the jury. *See Real Asset Management, Inc. v. Lloyd's of London*, 61 F.3d 1223 (5th Cir. 1995)(remanding the case to determine extent of damages caused by plaintiff's failure to mitigate).

Plaintiffs object that here the appraisers decided what portion of the damages was caused by what they decided was the insured's failure to mitigate.  All of the damages were caused by the hurricane.  In determining that part of the loss was caused by

-14-

Plaintiffs' failure to mitigate and then reducing the award by that amount, the appraisers took away the Court's authority to determine the liability issue in violation of *Johnson*, 290 S.W. 3d at 892 ("Appraisers can decide the cost of repairs in this context, but if they can also decide causation there would be no liability questions left for the courts."). The appraisers, rather than the court and the jury, decided what they thought was the amount of damages that could have been avoided by reasonable mitigation and who should pay that amount. They failed to satisfy Plaintiffs' request that they separate the damages that they believed reasonable mitigation would have saved from the amount of loss so that the court could make a proper determination of liability. Thus they deprived the court and jury of their function. Moreover although the evidence shows that mitigation was considered (#40, Exs. 1, 3, 4), the face of the appraisal award does not mention mitigation. Plaintiffs complain, "If the panel is allowed to ignore the request for delineation and reduce the recovery on account of mitigation without revealing the amount of the reduction, then the panel would be able to exceed its authority without revealing its transgression." #40 at p. 12. Plaintiffs further assert that *Johnson*, 290 S.W. 3d at 895, sets out the proper remedy after appraisers exceed their authority: the flaw should be proved at trial and the award set aside.

### Defendant's Response (#44)

Hartford states that Texas courts have long interpreted the

-15-

appraisers' authority to determine the dollar amount of the property damage they are assigned to review to include the power to determine the extent of the covered damage even when the appraisers' inquiry includes an element of causation. Citing *Johnson*, 290 S.W. 3d at 891 ("Causation relates to both liability and damages because it is the connection between them."), Hartford urges that where different types of damages occur to different types of property, appraisers may have to decide the damage caused by each before the courts can decide liability. *Id.* at 893. It maintains that under *Johnson* and the policy's appraisal clause here, the appraisers and the umpire in this dispute did not exceed their authority by considering the extent of damage caused by wind, a covered peril, during their appraisal determination. Hartford asserts that to set aside the appraisal award, Plaintiffs would have to prove, but have not and cannot, that the umpire, a former state district court judge, conspired or colluded with Hartford's appraiser to deny fair compensation to Plaintiffs for their hurricane loss.

Moreover, nothing in the award or the record states or shows that the umpire subtracted damage caused by failure to mitigate. The award documents (#40, Ex. 4) expressly state that the dollar amounts shown are for "the amount of loss."

Hartford contends that *Wells* is inapplicable because unlike the single injury in that case, here there are multiple, divisible causes of damage (hurricane, pre-existing wear and tear, and damage

-16-

caused by Plaintiffs abandonment of the property after April 2009). Hartford argues that *Lundstrom,* in which the appraisers assessed monetary sums for damages due to water (a covered peril), but none for damage due to mold (over which coverage was disputed), should govern here.   In *Lundstrom* the court of appeals, rejecting the argument that appraisal is precluded whenever causation is at issue, affirmed the award for water damages and rendered mold damage dispute moot by finding no coverage for mold damage.   As in Lundstrom, the appraisal panel determined what damage was caused by the hurricane, i.e., the covered loss, which inherently includes consideration of causation to determine the extent of covered damage, and then made that amount the basis of the umpire's award. *Johnson* and *Lundstrom* hold that appraisers are acting within the scope of their authority in considering causation  to separate a loss due to a covered event from a property's pre-existing wear-and-tear condition and from the property's post-loss condition attributable to the insured's neglect of the property.   Hartford charges that through Plaintiffs' argument that Plaintiffs' failure to mitigate their damages is a liability determination, Plaintiffs are trying "to reformulate the Policy's Neglect Exclusion into a liability argument," improper under *Johnson*.   Appraisal panels can consider causation when deciding between damage for which there is coverage from excluded damage caused by pre-existing conditions, neglect, etc.

**Plaintiffs' Reply (#45)**

Plaintiffs contend that *Lundstrom*, heavily relied upon by Hartford, actually supports Plaintiffs' position. *Lundstrom* involved multiple leaks caused by the alleged negligence of a contractor against whom the Lundstroms obtained a substantial settlement. The continuous leaks caused significant problems, including substantial mold. The insurer, USAA, invoked the appraisal clause on only a narrow issue, damages to the interior of a townhome caused by the "initial wetting," and USAA expressly notified the Lundstroms that the appraisal "will not address damages involving the ongoing leaking or mold that has resulted. This is a coverage issue which we have discusse[d] and denied. It is the duty of the Appraisers to address property damages and not address policy conditions or coverage." *Lundstrom*, 192 S.W. 3d at 87. Plaintiffs characterize *Lundstrom* as a pre-*Johnson* case in which the Lundstroms challenged the appraisal award not because it involved coverage/liability issues, but because "the appraisal clause can be invoked only when the scope of damage is agreed and not when coverage or causation is disputed." 192 S.W. 3d at 87. *Lundstrom* in essence held that appraisers cannot determine liability by determining what caused the loss. They should not determine that a failure to mitigate caused the loss and make the legal determination that the award should be reduced because of that finding.

-18-

Plaintiffs assert that like *Wells* and unlike *Lundstrom*, the appraisal in this suit did involve coverage issues. Like USAA in *Lundstrom* when it directed the appraisers not to consider pending coverage issues like mold, Plaintiffs here attempted to get Hartford to do the same in counsel's emails of February 11, 2013 (#40, Ex. 2), but Hartford refused. When causation is involved, it will not bar the appraisal from going forward. If there are two possible causes of the same damage, as in *Wells* (foundation damage caused by either pipe link or movement), appraisers should only find the total amount of damage without regard to causation and leave the court to determine coverage issues. *Johnson*, 290 S.W. 3d at 894 ("[I]n most cases appraisal can be structured in a way that decides the amount of loss without deciding any liability questions. As already noted, when an indivisible injury to property may have several causes, appraisers can assess the amount of damage" and leave to the court a determination of coverage issues.). Here the appraisers should have been told not to consider mitigation or any other causation issue that involved coverage. When separate types of damage (such as the water and mold in *Lundstrom*) have different possible causes, the appraisers should assess the damages as to each so that the court, not the appraisers, can determine causation and liability. In *Lundstrom* the court determined there was no coverage on the mold because it was clear that the appraisal excluded any consideration of mold. Plaintiffs contend that the award should make the damages

clear by an express limitation on the appraisal process regarding mitigation, as in *Lundstrom* regarding mold damage, or by an explanation of the award to show what was done, as in *Wells*.  Here Hartford refused to agree to an express limitation on the appraisal, and the umpire refused the dissenting appraiser's request to explain in the award how mitigation affected the award.  Thus the parties and the court have no way to decide how the undisputed consideration of mitigation affected the award.  The award is inherently flawed and should be disregarded.  Moreover, Hartford now wants to exploit the ambiguity that Plaintiffs sought to avoid.

### Hartford's Supplement to Its Response (#46)

Hartford asks the Court to consider the recently issued Fifth Circuit opinion in *TMM*, 730 F.3d 466 (rejecting *Wells* and relying on *Johnson* and *Lundstrom* in holding that appraisal panels are acting within the scope of their authority when they consider whether damage was caused by a particular event or was instead the result of non-covered perils).  The Court has discussed *TMM* in the Relevant Law section of this Opinion and Order (pp. 1-8).

Hartford argues that as in *TMM*, the appraisal panel sought to determine what damage was caused by the hurricane and that damage constituted the basis of the umpire's award.  Hartford's appraiser and the umpire did not make a liability determination.  Under the policy, pre-existing "wear and tear" is espressly excluded, as is neglect as it relates to a property's post-loss condition.  *TNN*,

-20-

*Johnson*, and *Lundstrom* together establish that the appraisal party has the authority to consider causation to separate loss due to a covered event from post-loss conditions attributable to the insured's neglect, as the panel did in this case.   Plaintiffs improperly are attempting to reconstruct the policy's "Neglect Exclusion" into a liability argument, an interpretation which the Court should avoid as the Texas Supreme Court has indicated in *Johnson* and *TMM*.

In sum Hartford asks the Court to deny Plaintiffs' motion to set aside award because the Hartford appraiser and the umpire were within their authority to consider causation in this context and to segregate uncovered damage in order to determine the amount of the covered loss.

### Court's Decision

After considering the parties' briefs, the documentary evidence, and the applicable law, the Court agrees with Hartford. Appraisal panels act within their authority when they determine whether damage was caused by a covered event or was the result of non-covered pre-existing conditions like wear and tear or, in this case, neglect under the terms of the policy. Accordingly, the Court

ORDERS that Plaintiffs' motion to set aside award is DENIED.

**SIGNED** at Houston, Texas, this <u>30th</u> day of <u>January</u>, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE