IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED NEUROLOGY, P.A. AND        §
ATHARI REAL ESTATE LTD.,          §
                                  §
            Plaintiffs,           §
                                  §
VS.                               §    CIVIL ACTION H-10-4248
                                  §
HARTFORD LLOYD'S INSURANCE CO.,   §
                                  §
            Defendant.            §

**OPINION AND ORDER**

The above referenced cause alleges breach of contract, breach of duty of good faith and fair dealing, and violations of §§ 541.006(a)(unfair settlement practices) and 542.051 *et seq.* (prompt payment of claims) of the Texas Insurance Code and of the Deceptive Trade Practices Act ("DTPA") §§ 17.41 *et seq.* (engaging in "false, misleading or deceptive acts or practices") in Defendant Hartford Lloyd's Insurance Company's ("Hartford's") denial of adequate reimbursement for damage purportedly caused by Hurricane Ike to the roofs and interiors of two of Plaintiffs' commercial properties, located at 2315 and 2321 Southwest Freeway, Harris County, Texas, under an insurance policy[1] issued to Plaintiff United Neurology, P.A. ("United Neurology") by Hartford.  Pending before the Court are (1) Hartford's motion for partial summary judgment (instrument

---

[1] Policy No. 61SBAVM1383 ("the Policy"), covering the period form August 21, 2008 to August 21, 2009.  A certified copy is attached to #20 as Ex. A.

#20)[2] on Plaintiff Athari Real Estate Ltd.'s ("Athari's") claims against Hartford for loss of business rental income at the 2315 Southwest Freeway property; and (2) Hartford's motion for summary judgment (instrument #48) on United Neurology's claims against Hartford under the Policy.

### Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on

---

[2] The Court abated action (#25) on February 8, 2012 pending the outcome of an appraisal, now completed, and lifted the stay on July 19, 2013 (#41). On January 30, 2014 (#47), the Court also denied Plaintiffs' motion to set aside appraisal award (#40). Pursuant to the appraisal award, Hartford paid an additional $38,423.42 to United Neurology and now argues that payment constitutes policy compliance and renders Plaintiffs' extra-contractual claims meritless.

which the nonmovant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v.*

*City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).   Allegations in a plaintiff's complaint are not evidence.  *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991).  The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial."  *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

The party asserting an affirmative defense, such as the statute of limitations or estoppel, bears the burden of proof on it.  *F.T.C. v. National Business Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004), *cert denied*, 544 U.S. 904 (2005).  *See* Fed. R. of Civ. P. 8(c)("In responding to a pleading, a party must

affirmatively state any avoidance or affirmative defense including"
estoppel and statute of limitations.).  Nevertheless, a "technical
failure to comply precisely with Rule 8(c) is not fatal" and does
not "result[] in a waiver" as long as the defendant raises the
defense "in a manner that does not result in unfair surprise" and
"at a pragmatically sufficient time," and the plaintiff was not
prejudiced in its ability to respond." *Lucas v. United States*, 807
F.2d 414, 417 (5th Cir. 1986); *Vanhov v. United States*, 514 F.3d
447, 450 (5th Cir. 2008); *Lee v. U.S.*, 765 F.3d 521, 523-24 (5th Cir.
2014).  The party without the burden of proof on the affirmative
defense moving for summary judgment on it needs only to demonstrate
an absence of evidence on an essential element of the affirmative
defense, and then the burden shifts to the nonmoving party to
support its affirmative defense by affidavits, depositions, answers
to interrogatories and admissions on file that evidence specific
facts showing a genuine issue of material fact for trial.  *United
Farmers Agents Ass'n, Inc. v. Farmers Ins. Exchange*, 892 F. Supp.
890, 898 (W.D. Tex. 1995), *citing Celotex*, 477 U.S. at 323-24.  If
no such evidence is produced, the movant is entitled to judgment as
a matter of law.  *Id.*

## Applicable Law

Because this case was removed from Texas state court on
diversity jurisdiction, Texas substantive law applies.  *Erie R.R.
Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938).  Therefore the Court

looks to final decisions by the Texas Supreme Court or, where there are none, attempts to determine as best as it can what that high court would decide about an issue by examining decisions of intermediate appellate state courts. *James v. State Farm Mutual Auto. Ins. Co.*, 719 F.3d 447, 451 (5th Cir. 2013), *citing Westlake Petrochems., L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 238 n.5 (5th Cir. 2012), and *Howe ex rel. Howe v. Scarsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000).

Under Texas law, insurance policies are construed under the usual principles of contract law. *American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998), *citing Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996); *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W. 3d 547, 551 (Tex. 2003). The court's primary role is to give effect to the written expression of the parties' intent. *Balandran v. Safeco Ins. Co. of America*, 972 S.W. 2d 738, 741 (Tex. 1998), *citing State Farm Life Ins. Co. v. Beaston*, 907 S.W. 2d 430, 433 (Tex. 1995). In defining the scope of coverage, the court examines the entire policy to determine the true intent of the parties. *Utica Nat'l Ins. Co. of Texas v. Am. Indem. Co.*, 141 S.W. 3d 198, 202 (Tex. 2004). The court must read the policy as a whole and give effect to each of its contractual provisions so that none is rendered meaningless. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W. 3d 154, 157 (Tex. 2003). The terms of a contract are given their

plain, ordinary, generally accepted meaning unless the contract itself redefines those terms or indicates that the parties used the terms in a technical or different sense. *Bituminous Cas. Corp. v. Maxey*, 110 S.W. 3d 203, 208-09 (Tex. App.--Houston [1st Dist.] 2003, pet. denied), *citing W. Reserve Life Ins. v. Meadows*, 152 Tex. 559, 261 S.W. 2d 554, 557 (1953); *Heritage Res., Inc. v. NationsBank*, 939 S.W. 2d 118, 121 (Tex. 1996). When a contract is clear and unambiguous, i.e., when it can be given a definite or certain legal meaning, the court enforces it as written. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Industries, Inc.*, 907 S.W. 2d 517, 520 (Tex. 1995). Where the contract's language can be given two or more reasonable interpretations, it is ambiguous. *Id.* In an insurance policy, if a provision, especially an exclusionary clause, is ambiguous, the court must resolve the ambiguity in favor of the insured. *Sink*, 107 S.W. 3d at 551; *see also Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)("In Texas, when an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern."). "Where an ambiguity involves an exclusionary provision of an insurance policy, [the court] 'must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Balandran*, 972 S.W. 2d at 741, *quoting Nat'l Union Fire*

-7-

*Ins. Co. v. Hudson Energy Co.*, 811 S.W. 2d 552, 555 (Tex. 1991).

Standing is a required element of subject matter jurisdiction and a constitutional prerequisite for maintaining suit. *Texas Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W. 2d 440, 444-45 (Tex. 1993). Whether a party has standing to pursue a claim is a question of law. *Mayhew v. Town of Sunnyvale*, 964 S.W. 2d 922, 928 (Tex. 1998), *cert. denied*, 526 U.S. 1144 (1999). To establish standing to sue for a breach of contract, "the plaintiff must either be in privity of contract with the defendant or be a third-party beneficiary entitled to enforce the contract." *Allan v. Nersesova*, 307 S.W. 3d 564, 571 (Tex. App.--Dallas 2010, no pet.). A plaintiff can show privity of contract by proving the defendant was either a party to an enforceable contract with the plaintiff or with a party which assigned its cause of action to the plaintiff. *Id.* "Generally a property insurance policy is a personal contract between the insured and the insurer." *Ostrovitz v. Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W. 3d 379, 388 (Tex. App.--Dallas 2012). Furthermore, "'a third person who is not a party to a contract of insurance usually is not entitled to a strict construction in his favor in determining whether the contract was made for his benefit.'" *Id., citing McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W. 2d 32, 37 (Tex. Civ. App.--

Dallas 1974, writ ref'd n.r.e.).[3]

To demonstrate that it is a third-party beneficiary to a contract, a party must prove that it is either a donee or creditor beneficiary of the contract, and not someone who is benefitted only incidentally by performance of the contract. *Ostrovitz & Gwinn*, 393 S.W. 3d at 388, *citing MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W. 2d 647, 651 (Tex. 1999)("One is a donee beneficiary if the performance promised will, when rendered, come to him as a pure donation. . . . If, on the other hand, that performance will come to him in satisfaction of a legal duty owed to him by the promisee, he is a creditor beneficiary. . . . [T]his duty may be an 'indebtedness, contractual obligation or other legally enforceable commitment' owed to the third party.")(citations omitted).  The contracting parties' intention "to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Id., citing id.*, and *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W. 3d 894, 900 (Tex. 2011)(Traditionally Texas courts have presumed that a party contracts only for its own benefit).  An intention to confer a direct benefit on a third party must be found in the wording of the

---

[3]  Hartford maintains that Athari is neither a named insured nor an additional insured under the Policy, and Athari does not allege that it was assigned a breach-of-contract claim with someone in privity, so there is no privity between it and Hartford.

contract, and not from what the contracting parties purportedly meant. *Id.* "'All doubts must be resolved against conferring third-party beneficiary status.'" *Id., quoting Tawes v. Barnes*, 340 S.W. 3d 419, 425 (Tex. 2011)("Traditionally, Texas courts have maintained a presumption against third-party beneficiary agreements."). "The fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make [a party] a third-party beneficiary." *Maddox v. Vantage Energy, LLC*, 361 S.W. 3d 752, 757 (Tex. App.--Fort Worth 2012, pet. denied), *citing Loyd v. ECO Res., Inc.*, 956 S.W. 2d 110, 134 (Tex. App.--Houston [14th Dist.] 1997, no pet.), *abrogated on other grounds by Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W. 3d 735 (Tex. App.--Houston [14th Dist.] 2008, pet. dism'd). A court may not create a third-party beneficiary by implication. *MCI Telecomms.*, 995 S.W. 2d at 651. A third-party beneficiary is not required to show that the signatories executed the contract solely to benefit the non-contracting party, but only that they intended, at least in part, to discharge an obligation owed to a third party. *Stine v. Steward*, 80 S.W. 3d 586, 589 (Tex. 2002). It is the contracting parties' intent, not that of the alleged third party beneficiary, that controls the decision whether the third party may enforce or challenge a contract between two other parties. *First Union Nat'l Bank v. Richmont Capital Partners I, LP*, 168 S.W. 3d 917, 928-29

(Tex. App.--Dallas 2005, no pet.), *citing MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 955 S.W. 2d 647, 651 (Tex. 1999).  Where the insurance policy language expressly indicates that the parties clearly intended that a third party be a beneficiary of their agreement, Texas courts have recognized third-party beneficiaries.  *Id., citing Paragon Sales Co. v. N.H. Ins. Co.*, 774 S.W. 2d 659, 660-61 (Tex. 1989).[4]

Under Texas law, to prevail on a breach of contract claim, the plaintiff must prove (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained as a result of the breach.  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009), *citing Aquiar v. Segal*, 167 S.W. 3d 443, 450 (Tex. App.-Houston [14th Dist.] 2005, pet. denied).

To recover under an insurance policy, a plaintiff must allege facts showing that the alleged damages are covered by his insurance policy.  *Employers Cas. Co. v. Block*, 744 S.W. 2d 940, 944 (Tex.

---

[4] In *Ostrovitz,* 393 S.W. 3d at 388, when the third party argued that this rule should not apply because of the rule that ambiguities in an insurance policy are to be resolved in favor of coverage, the court disagreed, stating "'a third party who is not a party to a contract of insurance is not entitled to a strict construction in his favor in determining whether the contract was made for his benefit.'"  *Id., quoting McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W. 2d 32, 37 (Tex. Civ. App.--Dallas 1974, writ ref'd n.r.e.), and *citing First Union Nat'l Bank v. Richmont Capital Partners I, LP*, 168 S.W. 3d 917, 929 (Tex. App.--Dallas 2005, no pet.)(a third party's claim to third-party-beneficiary status must fail if there is any reasonable doubt).

1988), *overruled on other grounds, State Farm Fire and Casualty v. Gandy*, 925 S.W. 2d 696 (Tex. 1996); *Data Specialists, Inc. v. Transcontinental Ins. Co.* 125 F.3d 909 (5th Cir. 1997)("Texas law clearly states that for an insurance company to be liable for a breach of its duty to satisfy a claim presented by its insured, the insured must prove that its claim falls within the insuring agreement of the policy.  The insurer's duty to indemnify, or provide coverage, is triggered by the actual facts establishing liability in the underlying suit.")(*citations omitted*).

There is a common law duty of good faith and fair dealing[5] (for "denying or delaying payment of a claim if the insurer knew or should have known it was reasonably clear the claim was covered," which includes the insurer's obligation to conduct an adequate investigation of the claim[6]), as well as a statutory one under the Texas Insurance Code § 541.060(a)(2)(an insurer commits an unfair or deceptive act when it "fail[s] to effectuate a prompt, fair, and equitable settlement" of a claim for which its liability "has become reasonably clear") or §541.060(a)(7)(where it fails to reasonably investigate a claim in order to determine whether its

---

[5] *See, e.g., Lundstrom v. United Serv. Auto. Ass'n-CIC*, 192 S.W. 3d 78, 96 (Tex. App.--Houston [14th Dist.] 2006, pet. denied)("The common law duty of good faith and fair dealing is breached when an insurer denies or delays payment of a claim after its liability has become reasonably clear.").

[6] *See State Farm Lloyds v. Nicolau*, 951 S.W. 2d 444, 449 (Tex. 1997).

liability is reasonably clear).[7]   The standard for both is the same
and they are often examined together.   *Progressive County Mutual
Ins. Co. v. Boyd*, 177 S.W. 3d 919, 922 (Tex. 2005); *United Servs.
Auto Ass'n v. Croft*, 175 S.W. 3d 457, 471-72 (Tex. Civ. App.--
Dallas 2005, no pet.).   It is well settled that a special
relationship between an insured and an insurer imposes upon the
insurer a duty to investigate thoroughly and in good faith.   *Viles
v. Security Nat'l Ins. Co.*, 788 S.W. 2d 566, 568 (Tex. 1990).

> In the insurance context a special relationship arises
> out of the parties' unequal bargaining power and the
> nature of insurance contracts which would allow
> unscrupulous insurers to take advantage of their
> insureds' misfortunes in bargaining for settlement or
> resolution of claims.   In addition, without such a cause
> of action insurers can arbitrarily deny coverage and
> delay payment of a claim with no more penalty than
> interest on the amount owed.   An insurance company has
> exclusive control over the evaluation, processing and
> denial of claims.   For these reasons a duty is imposed
> that "[An] indemnity company is held to that degree of
> care and diligence which a man of ordinary care and
> prudence would exercise in the management of his own
> business."

*Arnold v. National County Mutual Fire Ins. Co.*, 725 S.W. 2d 165,
167 (Tex. 1987), *quoting G.A. Stowers Furniture Co. V. Am.
Indemnity Co.*, 15 S.W. 2d 544, 548 (Tex. Comm'n App. 1929, holding
approved).   The duty is not delegable and extends only to the
insurer in contractual privity with the insured, and not to an
investigator or adjuster, because the insurance contract gives the

---

[7] *See, e.g., Universe Life Ins. v. Giles*, 950 S.W. 2d 48, 50-
51 n.5 (Tex. 19970

-13-

insurer exclusive control over the claim and thus creates the requisite "special relationship" *Natividad v. Alexsis, Inc.*, 875 S.W. 2d 695, 697-98 (Tex. 1994).  It is a duty imposed by law that gives rise to tort damages, including actual and exemplary damages, rather than an implied covenant that gives rise to contract liability.  *Id.*

"The issue of the breach of the duty of good faith and fair dealing 'focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct in handling the claim.'" *Aleman v. Zenith Ins. Co.*, 342 S.W. 3d 817, 822 (Tex. App.--El Paso 2011), *quoting Lyons v. Millers Casualty Ins. Co. of Tex.*, 866 S.W. 2d 597, 601 (Tex. 1993).  "An objective standard is utilized to determine whether a reasonable insurer under similar circumstances would have delayed or denied payment of a claim."  *Id., citing Aranda v. Insurance Co. of N. America*, 748 S.W. 2d 210, 213 (Tex. 1888).  An insurer does not act in bad faith where a reasonable investigation shows the claim is questionable, and an insurer maintains the right to deny such a claim without being subject to liability or an erroneous denial of the claim.  *Ruttiger*, 265 S.W. 3d at 661, *citing United Services Auto Ass'n v. Croft*, 175 S.W. 3d 457, 471 (Tex. App.--Dallas 2005).  A bona fide dispute about the insurer's liability on the insurance contract does not rise to the level of bad faith.  *Transp. Ins. Co. V. Moriel*, 879 S.W. 2d 10, 17 (Tex. 1994).  "As long as the insurer has a reasonable basis to

deny or delay payment of a claim, even if that basis is eventually determined by the factfinder to be erroneous, the insurer is not liable for the tort of bad faith." *Higginbotham v. State Farm Mutual Automobile Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997)., *citing Lyons v. Millers Casualty Ins. Co.*, 866 S.W. 2d 597, 600 (Tex. 1993).  If a claim is not covered by the contract and the insurer has not otherwise breached the contract, the insurer is not liable for breach of bad faith and fair dealing where it denies the claim.  *Id., citing Lundstrom*, 193 S.W. 3d at 96.

Whether there is a reasonable basis for denying a claim must be evaluated by the facts before the insurer at the time it denied the claim. *Viles*, 788 S.W. 2d at 567.  "[W]hether an insurer acted in bad faith because it denied or delayed payment of a claim after its liability became reasonably clear is a question for the factfinder."  *Giles*, 950 S.W. 2d at 56.  "It is an 'objective determination' involving whether 'a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits.'  So long as a reasonable basis for denial of the claim exists the insurer will not be subject to liability for an erroneous denial of a claim." *Thompson v. Zurich American Ins. Co.*, No. A-09-CA-493-SS, 2010 WL 3784204, *4 (W.D. Tex. Sept. 21, 2010), *citing Republic Ins. Co. V. Stoker*, 903 S.W. 2d 338, 340 (Tex. 1995).

Appraisal clauses in property insurance policies in Texas

-15-

provide an extra-judicial method to resolve disputes regarding the amount of loss for a covered claim and bind "the parties to have the extent or amount of the loss determined in a particular way." *In re Universal Underwriters of Texas Ins. Co.*, 345 S.W. 3d 404, 406-07 (Tex. 2011); *Breshears v. State Farm* Lloyds, 155 S.W. 3d 340, 343-44 (Tex. App.--Corpus Christi 2004). Because the language of a contract is intended to embody the intention of the parties, Texas courts have held that appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable in the absence of fraud, accident or mistake. *TMM Investments, Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 471-72 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1555 (2014); *State Farm Lloyds v. Johnson*, 290 S.W. 3d 886, 888 (Tex. 2009); *Michels v. Safeco Ins. Co. v. Indiana*, ___ Fed. Appx. ___, 2013 WL 5935067, at *5 (5th Cir. Nov. 6, 2013). There is a strong public policy favoring enforcement of appraisal clauses and every reasonable presumption is indulged to sustain an award; the burden of proof is on the party seeking to avoid such an award. *Michels*, 2013 WL 5935067, at *5-6.[8] An award that is substantially in compliance with the insurance policy is presumptively valid and minor discrepancies in the appraisal

---

[8] The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court. *Lundstrom v. United Services Auto. Ass'n-CIC*, 192 S.W. 3d 78, 87 (Tex. App.--Houston [14th Dist.] 2006, pet. denied); *TMM*, 730 F.3d at 472.

process or award will not invalidate it. *Id.* at *6, *citing Providence Lloyds Ins. Co. v. Crystal City I.S.D.* 877 S.W. 2d 872, 875 (Tex. App.--San Antonio 1994, no writ); *TMM*, 730 F.3d at 472. An award not in compliance with the policy's requirements may be disregarded. *Michels*, 2013 WL 5935067, at *6. In addition to noncompliance with the policy requirements, an appraisal award will also not be enforced if it was made without authority or was the result of fraud, accident or mistake. *TMM*, 730 F.3d at 472, *citing Crystal City*, 877 S.W. 2d at 875-76. An appraisal award serves to estop one party from challenging the value of damages in a lawsuit on an insurance contract, thereby leaving only the issue of liability for the court. *TMM*, 730 F.3d at 472.

Generally a standard appraisal clause, such as the one at issue here, specifies appraisal as a means for resolving the "amount of loss" for a covered claim and "binds the parties to have the extent or amount of the loss," i.e., the damages, determined by the appraisers, while the question of liability for the loss is left to the court. *State Farm Lloyds v. Johnson*, 290 S.W. 3d 886, 889 (Tex. 2009). "The line between liability and damage questions may not always be clear," however. *Id.*

In *State Farm Lloyds v. Johnson*, the insured claimed that her roof had been damaged by a hailstorm. The insurance company determined that only the shingles on the ridge of the roof had been damaged by hail (as opposed to some other cause), disagreed about

-17-

how many shingles were damaged and needed to be replaced, and
offered to pay an amount much lower than she had requested, so the
claimant invoked the appraisal provision.  State Farm Lloyds argued
against appraisal on the grounds that appraisers could not decide
causation questions.   The Texas Supreme Court opined that the
dispute about how many shingles were damaged and needed to be
replaced fell within the scope of appraisal because the amount of
the loss, i.e., cost of replacing the shingles (or anything else),
depends on both the price and the number of shingles.  The Texas
Supreme Court further noted that sometimes replacing only a part of
a roof is not reasonable or even possible; the policy at issue in
the case stated that the insurer would pay reasonable and necessary
costs to repair or replace the damaged property and that repair of
the replacement is an "amount of loss" issue for the appraisers.
It emphasized, "Causation relates to both liability and damages
because it is the connection between them."  *Id.* at 891-92.   It
further observed, "[W]hen different causes are alleged for a single
injury to property, causation is a liability question for the
courts."  *Id.* at 892, *citing Wells v. American States Preferred
Ins. Co.*, 919 S.W. 2d 679, 685-86 (Tex. App.--Dallas 1996, writ
denied)(where "appraisers assessed foundation damage due to
plumbing leaks (a covered peril) as '0' but damage due to settling
(an excluded peril) as $22,875.94," the appellate court set aside
the appraisal and held that appraisers could decide the amount of

-18-

damage, but not what caused it).  On the other hand, where different kinds of damages affect different items of property, the appraisers may need to decide the damage caused by each before a court can determine liability.  *Id.* at 892, *citing Lundstrom v. United Services Automobile Ass'n*, 192 S.W. 3d 78, 88 (Tex. App.-- Houston [14th Dist.] 2006, petition denied)(where "appraisers assessed $4,226.19 for damages due to water (a covered peril) but made no finding for damages due to mold (as to which coverage was disputed)," the district court upheld, and the appellate court affirmed, the   award for water damage, but the appellate court found no coverage existed for the mold damage, rendering that issue moot).  *Id.*  Where causation would involve dividing the loss due to a covered event from that of a property's pre-existing wear and tear (a common occurrence, generally excluded by policies), the Texas Supreme Court reasoned that if the appraisers could never allocate damages between the covered and excluded perils, appraisal clauses would be largely undermined, a result that should be avoided.  *Id.* at 892-93.  The Texas Supreme Court commented,

> [A]ppraisers must always consider causation, at least as
> an initial matter.  An appraisal is for damages caused by
> a specific occurrence, not every repair a home might
> need.  When asked to assess hail damage, appraisers look
> only at damage caused by hail; they do not consider leaky
> faucets or remodeling the kitchen . . . .  Any appraisal
> necessarily includes some causation element, because
> setting the "amount of loss" requires appraisers to
> decide between damages for which coverage is claimed from
> damages caused by everything else.

*Id.* at 893.  It concluded, "[W]hether the appraisers have gone

-19-

beyond the damage questions entrusted to them will depend on the nature of the damage, the possible causes, the parties' dispute, and the structure of the appraisal award."  *Id.*  In sum,

> [W]hen an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts.  When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it.[9]  When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong. And when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding "$0" if that is how much damage they find.

*Id.* a 894.

Recently, in *TMM Investments Ltd.*, 730 F.3d 466, the Fifth Circuit reversed the district court's decision to set aside an appraisal award.  In that case, a hailstorm severely damaged the roof of a shopping center owned by TMM and insured by Ohio Casualty Insurance Company ("OCIC").  TMM and OCIC disagreed significantly on the estimated damages, so TMM invoked the appraisal clause.  TMM argued that the storm damaged the skylights, while OCIC contended that rocks were responsible; TMM maintained that the roof membrane was damaged by the storm, but OCIC insisted that it was damaged because of improper installation.  The district court *inter alia* decided the two appraisers improperly considered causation and coverage issues when they did not include an estimate for damage to

---

[9] *Citing Lundstrom*, 192 S.W. 3d at 87-89 ("rejecting argument that appraisal is barred 'wherever causation factors into the award,' and affirming appraisal in which appraisers separated water damage from mold damage").

the roof membrane and the skylights, relying on *Wells*, 919 S.W. 2d 679.  It concluded that the appraisers exceeded the scope of their authority in part for that reason, set aside the award, and sent the case to trial on causation, liability, and damages.

On appeal, the Fifth Circuit concluded that the appraisers did not exceed their authority when they considered causation issues and that the part of the appraisal award addressing the damaged skylights and roof membrane should not have been set aside.  730 F.3d at 471.  Relying on *State Farm Lloyds v. Johnson*, 290 S.W. 3d 886 (appraisers do not exceed their authority "when they consider whether the damage was caused by a particular event or was instead the result of non-covered pre-existing perils like wear and tear"),[10] the appellate court in *TMM* determined that the case fell into the second, different category established by *State Farm Lloyds v. Johnson*, 290 S.W. 3d at 832, "when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability" because damage occurred to both the roof membrane and the skylights.  *TMM*, 730 F.3d at 475. In light of that ruling and coupled with the established rule that courts should use "every reasonable presumption to sustain an appraisal award," the Fifth

---

[10] *See also TMM*, 730 F.3d at 475 ("To the extent the appraisers merely distinguished damage caused by pre-existing conditions from damage caused by the storm, they were acting within their authority.").

Circuit concluded that *Johnson* mandated reversal of the district court's order setting aside the appraisal award.  *TMM*, 730 F.3d at 475.

"Every reasonable presumption will be indulged to sustain an appraisal award, and the burden of proof lies on the party seeking to avoid the award."  *TMM*, 730 F.3d at 472.  An award will be sustained unless (1) it was made by the appraisers and/or the umpire without authority,[11] (2) it was the result of fraud, accident, or mistake, or (3) the award did not comply with the terms of the contract.  *Id.*

To estop a breach of insurance contract claim a defendant must show "(1) the existence and enforceability of an appraisal award; (2) the timely payment of the award [by the insurer]; and (3) the acceptance of the appraisal award."  *Gabriel v. Allstate Lloyds*, No. 7:13-CV-181, 2013 WL 7885700, at *3 (S.D. Tex. Nov. 1, 2013), *citing Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, 459 Fed. Appx. 366, 368 (5th Cir. 2012)("Under Texas law when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is estopped by the appraisal award from maintaining a breach of contract claim against [the insurer].");  *Breshears,* 155 S.W. 3d at 344 (insurer met every requirement of the insurance contract where

---

[11] For example, the umpire is only authorized to act if two appraisers disagree and has no authority otherwise to act.  *TMM*, 730 F.3d at 472.

it participated in the appraisal process and paid the appraisal amount set by the appraisers and umpire; because the insurer "complied with every requirement of the contract, it cannot be found to be in breach."). The timeliness of that payment is governed by the agreement of the parties as manifested in the policy. *Id.* at *4, *citing Church of the Rock North v. Church Mutual Ins. Co.*, Civ. A. No. 3:10-CV-0975-L, 2013 WL 497879, at *8 (N.D. Tex. Feb. 11, 2013)("The issue of whether its post-appraisal payments were timely is determined by the parties' agreement."), *citing Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W. 2d 872, 878 (Tex. App.--San Antonio 1994, no writ); *Scalise v. Allstate Texas Lloyds*, No. 4:13-CV-178, 2013 WL 6835248, at *5 (S.D. Tex. Dec. 20, 2013)("[A]n insurer does not breach the insurance contract where, as here, it pays all damages determined by the appraisal."), *new trial denied*, 2014 WL 1401679 (S.D. Tex. Apr. 10, 2014). Indeed, "where the parties disagree on the amount of loss and submit to the contractual appraisal process to resolve the dispute, and the insurer pays all covered damages determined by the award, the insured may not then argue that the initial failure to pay those damages equates to a breach of the contract." *Scalise*, 2013 WL 6835248, at *5.

Under Texas law, timely payment of an appraisal award under the policy precludes an award of statutory penalties under the Texas Insurance Code §§ 541 and 542 as a matter of law.

*Breashears*, 155 S.W. 3d at 344; *Amine v. Liberty Lloyds of Texas, Inc.*, 2007 WL 2264477, at *4-6 (Tex. App.--Houston [1st Dist.] Aug. 9, 2007, no pet.); *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, No. Civ. A. H-09-3479, 2011 WL 819491, at *3 (S.D. Tex. Mar. 2, 2011)(holding that "Under Texas law, when an insurer makes timely payment of a binding and enforceable appraisal award and the insured accepts that payment, the insured is estopped by the appraisal award from maintaining a breach of contract claim against" the insurer), *aff'd*, 459 Fed. Appx. 366 (5th Cir. Jan. 24, 2012); *Waterhill Cos. Ltd. v. Great Am. Assurance Co.*, Civ. A. No. 05-4080, 2006 WL 696577, at *2 (S.D. Tex. Mar. 16, 2006)(once appraisal process is invoked, a delay in payment pursuant to the appraisal process does not constitute a violation of the Texas Insurance Code). *See also Church on the Rock North v. Church Mut. Ins. Co.*, No. 3:10-CV-0975-L, 2013 WL 497879 at *6 (N.D. Tex. Feb. 11, 2013)(holding that estoppel applies where there is a binding and enforceable appraisal award, the insurer timely paid the award, and the insured accepted the payment); *Scalise v. Allstate Texas Lloyds*, No. 7:13-CV-178, 2013 WL 6835248, at * 5 (S.D. Tex. Dec. 20, 2013)("[W]here the parties disagree on the amount of loss and submit to the contractual appraisal process to resolve that dispute, and the insurer pays all covered damages determined by the award, the insured may not then argue that the initial failure to pay those damages equates to a breach of contract.").

**Hartford's Undisputed Factual Allegations**[12]

Hartford states that on June 11, 2007, Athari and United Neurology entered into a Property Management Agreement (the "Agreement")[13] for United Neurology to manage, operate, control, rent, and lease the property at 2315 Southwest Freeway.  Pursuant to the Agreement's requirement that United Neurology "secure insurance to the building at all times," United Neurology purchased the Policy in dispute here.  Ex. A to #20.  Athari was not an additional insured under the Policy.

On September 23, 2008 United Neurology informed Hartford that the 2321 Southwest Freeway Property had suffered damage during Hurricane Ike.  Independent adjuster Bill Dunn with Reid, Jones, McRorie and Williams inspected the property on October 8, 2008. While Dunn did not find any damage caused by Hurricane Ike, he submitted an estimate of $406.02 for damage to a back window, which he determined had been damaged by flying debris in the course of the storm.  #48, Ex. A.  Hartford advised United Neurology on October 17, 2008 that it would not issue payment for the damage because the amount was below the Policy's deductible amount of $16,480.  #19-1, certified copy of the Policy at p. 9 (deductible of 2% of $824,000 replacement cost limit of insurance for hail and wind occurrences at the 2321 Southwest Freeway Property; #48, Ex.

---

[12] See #20 at pp.3-4; #48, pp. 2-5.

[13] Copy attached to #20 as Exhibit C.

B, Hartford's Oct. 17, 2008 denial letter to United Neurology.

On November 25, 2008 United Neurology reported that the 2315 property had also been damaged by Hurricane Ike. #48, Ex. S, Decl. of Martin R. Sadler, counsel for United Neurology. On December 9, 2008 independent adjuster Chip DeVilbiss, also of Reid, Jones, McRorie and Williams, inspected the property and found no direct damage to the roof caused by Hurricane Ike, but he did find damage to a sign and a cloth awning. #48, Ex. C. He visited the property a second time on January 29, 2009 with United Neurology's adjuster and engineer, but neither DeVilbiss nor United Neurology's engineer found that the storm caused an opening on the roof. *Id.*, Ex. D. DeVilbiss did write an estimate of $6,318.14, also less than the applicable $23,711 deductible, for damage to a window in the back elevation and to corner trim around the damaged awning. #19-1 at p. 11 (deductible of 2% of the $1,185,536 replacement cost limit of insurance for hail and wind occurrences at 2315 Southwest Freeway Property).

After United Neurology asked for another inspection of 2315 Southwest Freeway, Hartford hired HAAG Engineering to determine the cause of the claimed damage to the property. It performed an inspection on March 2, 2009 and found that (1) the roof was in poor condition due to normal wear and tear, (2) the majority of the leaks existed before the storm and were unrelated to a storm-created opening, (3) the wind forces of Hurricane Ike did not

damage the structural frame building components, (4) inadequate waterproofing for hurricane conditions resulted in moisture entry around windows and doors, (5) the wind did not damage the decorative brick veneer sections near the window, and (6) the damage from Hurricane Ike was restricted to two broken windows, partially lifted roof edge flashing, separated exterior fascia trim, a torn canvas awning, an advertising sign, and one panel of the brick veneer on the east side that may have been damaged by wind-borne debris. #48, Ex. F, HAAG Inspection Report at pp. 2, 8-9.

In a letter dated April 16, 2009[14] partially denying United Neurology's claim based on its inspectors' findings, Hartford stated that the "damage to the roof [was] from normal wear, tear, and deterioration" and that "the water entered through the seals around the windows because of wear, tear and deterioration as well," none of which was covered by the Policy. What damage the inspectors did attribute to the hurricane was still below the deductible amount. Hartford issued a payment of $5,987.74 for damage to a sign under a separate coverage with only a small deductible. It closed Plaintiffs' claim on June 2, 2009. #48, Ex. S at ¶3.

After Plaintiffs filed this action on September 13, 2010 in

---

[14] Ex. G:  date reflects date Hartford printed letter to forward to counsel.

-27-

Texas state court and after its subsequent removal to federal court by Hartford, Hartford invoked the appraisal provision of the Policy on November 10, 2010 (#48, Ex. K) and on November 30, 2010 designated Al Berryhill with CrossPointe Construction, Inc, as its appraiser (Ex. L.).   United Neurology argued that Hartford had waived its right to appraisal and refused to participate.   On December 28, 2011 Hartford filed a motion to compel appraisal (#19), which this Court granted by Opinion and Order of February 8, 2012 (#25), stating that "because the [appraisal] clause binds the parties, if Hartford satisfies the appraisal award, Plaintiff's breach of contract and bad faith claim will be subject to dismissal."  The order also stayed and administratively closed the case pending resolution of the appraisal.   On March 22, 2013 the umpire, Judge Carolyn Garcia, issued an appraisal award determining that the replacement cost value for the covered damage to the 2315 Southwest Freeway property, including service charges and overhead and profit, was $54,363.90, and for the 2321 Southwest Freeway Property, $24,250.24.   #40-4, Appraisal Award.   Hartford's appraiser, Alan Berryhill, agreed and, with Judge Garcia, signed the award on March 25, 2013.  *Id.*  United Neurology's appraiser, Lewis O'Leary, who had submitted a damage estimate of $961,000 to the umpire, did not sign it.  Hartford paid the appraisal award less the Policy deductibles, in the amount of $38,423.32, on March 29, 2013.  #48, Ex. N, March 29, 2013 letter from M. Sadler to R.

Green.  On July 17, 2013 Plaintiffs filed a motion to set aside the appraisal award (#40), which this Court denied on January 20, 2014 (#47).[15]  Hartford's second motion for summary judgment (#48) argues that Hartford's payment of the appraisal award fulfills the terms of the contract between it and United Neurology and moots all of United Neurology's contractual and extra-contractual claims.

On May 27, 2011, even though Plaintiffs had pleaded no claims for lost business income up until then, Plaintiffs designated Karl Killian as their expert for business income loss and valuation matters.  #48, Ex. H.  Killian's expert report of that date states that Athari had lost $430,877 in lost rental income and United Neurology lost $52,213 in business income when its clinic was closed for the ten-day period following Hurricane Ike.  #48, Ex. I at pp. 4-5.  Plaintiffs submitted to Hartford a business income loss statement (#20, Ex. B) in the amount of $497,250 for rental income allegedly lost since September 13, 2008 for the 2315 property.

On January 17, 2012 Hartford filed its first motion for partial summary judgment on Athari's causes of action against Hartford.  Furthermore it requested that United Neurology's counsel provide specific documentation supporting Killian's opinion that

---

[15] The Court concluded that "[a]ppraisal panels act within their authority when they determine whether damage was caused by a covered event or was the result of non-covered pre-existing conditions like wear and tear or, in this case, neglect, under the terms of the policy.  #47 at p. 21.

United Neurology lost $52,213 in business income,[16] but did not receive a response.   Hartford filed a second motion for summary judgment addressing United Neurology's claims on May 2, 2014.

### Hartford's Motion for Partial Summary Judgment

### Against Athari (#20)

Hartford moves for summary judgment against Athari on the grounds that (1) it is not in privity with, and did not have a contract with, Athari, (2) Athari is not a third-party beneficiary of the Policy, as the Policy is devoid of language creating such a status for Athari and the Policy shows no intent on Hartford's part to provide any benefit to Athari, and (3) Athari is not an additional insured under the Policy, so Athari cannot establish the essential elements of its contractual and extra-contractual claims, including common law bad faith and violations of the Texas Insurance Code and the DTPA, against Hartford.  In sum, as a third party, Athari lacks standing to assert a contractual cause of action under the Policy, as well as to assert extra-contractual causes of action against Hartford.  Insisting there is no basis for creating any duty, no less a duty of care great enough to state a claims for bad faith, Hartford argues that a claimant who lacks privity of contract with the insurer and who is not a third-party beneficiary under the Policy, absent a special relationship with

_____

[16] See #48, Ex. J, letter from Hartford's counsel to Plaintiffs' counsel requesting specific documents for their lost business income claim.

the insurer, as a matter of law has no standing to sue the insurer for extra-contractual causes of action. *See, e.g., Crown Life Ins. Co. v. Casteel*, 22 S.W. 3d 378, 384 n. 1 (Tex. 2000)(In amended Article 21.21, section 4(10)(b) of the Texas Insurance Code Texas Legislature codified case law holding that Article 21.21 of the Texas Insurance Code did not create a direct cause of action against an insurance carrier by third parties whose claims were based on the liability of the insureds); *Allstate Ins. Co. v. Watson*, 876 S.W. 2d 145, 149-50 (Tex. 1994)(third party had no standing to sue insurer under Article 21.21 of the Texas Insurance Code for unfair claims settlement practices); *Natividad v. Alexis, Inc.*, 875 S.W. 2d 695, 698 (Tex. 1994)(without a contract between an insurer and insured, no "special relationship" exists with a third-party claimant upon which a duty of good faith and fair dealing can be predicated); *Allstate Ins. Co. v. Watson*, 876 S.W. 2d 143, 149 (Tex. 1994)("A third party claimant has no contract with the insurer or the insured, has not paid any premiums, has no legal relationship to the insurer or special relationship of trust with the insurer, and, in short, has no basis upon which to expect or demand the benefit of the extra-contractual obligations imposed on insurers under art. 21.21, with regard to their insureds."). Hartford emphasizes that it insured United Neurology's interest in the Properties, not Athari's alleged interest.

More specifically, Hartford maintains that Athari lacks

standing to assert violations of chapter 541, subchapter B, of the Texas Insurance Code, which provides a cause of action to any "person" injured by another's deceptive acts or practices in the business of insurance.  Tex. Ins. Code, Chapter 542.003, formerly Tex. Ins. Code art. 21.21 § 16(a); *Casteel*, 22 S.W. 3d at 383-84. A "person" is "any individual, corporation, association, partnership, reciprocal exchange, inter-insurer, Lloyds insurer, fraternal benefit society, and any other legal entity engaged in the business of insurance, including agents, brokers, adjusters and life insurance counselors."  Tex. Ins. Code, chapter 541.002(2), formerly Tex. Ins. Code art. 21.21, § 2(a).  There is no automatic standing under Chapter 541 for a third-party beneficiary of a third party with a tort cause of action to sue an insurer directly. *Watson*, 876 S.W. 2d at 150; *Tamez v. Certain Underwriters at Lloyds*, 999 S.W. 2d 12, 21-22 (Tex. App.--Houston [14th Dist. 1998, pet. denied).  Chapter 41 does not incorporate the "consumer" standing requirement of the Texas Business & Commerce Code § 17.50. *Casteel*, 22 S.W. 3d at 386.  Nevertheless, if a subsection of the DTPA either specifically involves a consumer transaction or involves the misrepresentation of "goods and services" obtained by the plaintiffs, the plaintiff must prove "consumer" status to recover under Chapter 541.  *Casteel*, 22 S.W. 3d at 386; *Transport Ins. Co. v. Faircloth*, 898 S.W. 2d 269, 273-74 (Tex. 1995)(holding that an Insurance Code suit under the DTPA § 17.46(b)(23) and an

unconscionability claim under the DTPA § 17.50(a)(3) were not available to Faircloth because there was no evidence that she was a consumer). United Neurology purchased the Policy at issue and paid its premium to Hartford. *Casteel*, 22 S.W. 3d at 386 (if a term of a subsection of the DTPA section 17.46(b) requires consumer status, consumer status is required to sue under the DTPA or Article 21.21 for its violation); Tex. Bus. & Comm. Code § 17.45(4)(A "consumer" is "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that term does not include a business consumer that has assets of $25 million or more" or that is owned or controlled by a corporation or entity with assets of $25 million or more"). Since Athari did not purchase any goods or services from Hartford, Athari cannot qualify as a "consumer" with respect to Hartford. It was not an insured of Hartford, nor did it purchase any DTPA causes of action against Hartford. The Court agrees that Athari does not qualify to be a "consumer" under the DTPA. Therefore its DTPA claims must be dismissed as a matter of law.

Hartford explains that Texas courts have deliberately limited standing under the statute to bar claims of third parties seeking to sue an insurer based on the alleged liability of the insured because otherwise the insurer would have inconsistent and conflicting duties to third parties in comparison to duties owed to

the insured.  *Casteel*, 22 S.W. 3d at 384 & n.1.  Athari lacks
standing to sue for breach of duties related to the collection of
any proceeds owed under the Policy, in addition to lacking a
contractual tie to any insurance proceeds under the Policy.
Hartford's only duty in investigating the insurance claim is owed
to its insured, United Neurology.

As for claims of violations of Chapter 542.051 of the Texas
Insurance Code against Hartford, Athari again lacks standing to
bring them, insists Hartford.  Chapter 542.051 mandates that an
insurer follow specified procedures and meet specific deadlines
when it receives, accepts, rejects or pays an insurance claim.
Tex. Ins. Code §§ 542.051-542.061.[17]  There is no language in the
Policy that would create third-party beneficiary status for Athari.
To prevail on a claim for violation of Chapter 542.051-.061, the
claimant must show that it had a claim under an insurance policy,
for which the insurer is liable and that the insurer has not met
one or more of the requirements of Chapter 542.051-.061.  *Wellisch
v. United Services Auto. Ass'n*, 75 S.W. 3d 53, 57 n.2 (Tex. App.--
San Antonio 2002, pet. denied), *citing Allstate Ins. Co. v. Bonner*,

---

[17] Sections 542.051-542.061 were formerly codified as article
21.55 of the Texas Insurance Code.  *Lamar Homes, Inc. v. Mid-
Continent Cas. Co.*, 242 S.W. 3d 1, 16 (Tex. 2007).  The statute
provides that when an insurer wrongfully refuses or delays
payment of a claim, in addition to the amount of the claim, the
insurer is liable to the policy holder or beneficiary for
"interest on the amount of the claim at the rate of eighteen
percent a year in damages, together with reasonable attorney's
fees".  *Id.*, *citing* § 542.060(a).

51 S.W. 3d 289, 291 (Tex. 2001), *judgment withdrawn and superseded on rehearing,* No. 00-0282, 2001 WL 1412951 (Tex. June 21, 2001). Athari fails to meet the first element and thus cannot sue Hartford for violating Chapter 542.051-541.061 for failure to make prompt payment of claims.

In sum, because Athari did not have a contract with Hartford and Athari was not an intended third-party beneficiary of the Policy, Athari cannot prevail on its breach of contract claim. Because Athari lacks a breach of contract cause of action, its bad faith, Insurance Code, and DTPA claims fail because Hartford is not liable for breach of contract as a matter of law and Athari lacks evidence to support any of these causes of action.

### Plaintiffs' Response to #20 (#56)

Both Plaintiffs oppose #20, arguing that Athari, as the owner of the two Properties in dispute, is a third-party beneficiary under the plain language of the Policy since it was United Neurology's intention, as the manager of Athari's two Properties, to secure insurance on the Properties in compliance with the terms of its Property Management Agreement (the "Agreement") (#20, Ex. C) and with the intent of Hartford to provide certain benefits to the owner of the property, as stated in the Policy. The Policy states, section 5e (under "Loss Payment"),

> Our payment for physical loss or physical damage to the
> personal property of others will only be for the account
> of the owners of the property. We may adjust losses with
> the owners of physically lost or physically damaged

> property if other than you.  If we pay the owners, such
> payment will satisfy your claims against us for the
> owner's property.  (#20, Ex. A-1, p. 45)

Thus the Policy confers direct benefits (intended third-party benefits) on the owner of the buildings, Athari, separate from the named insured, United Neurology.

Specifically, Plaintiffs claim that Athari is a creditor beneficiary of the insurance Policy, one to which the performance promised will come in satisfaction of a legal duty owed to Athari by United Neurology based on the promise of the Property Management Agreement between Athari and United Neurology. *MCI Telecomms.*, 995 S.W. 2d at 651 (the legal duty owed to a creditor beneficiary may be an "indebtedness, contractual obligation or other legally enforceable commitment" owed to the third party); *Stine v. Steward*, 80 S.W. 3d 586, 589 (Tex. 2002)("The duty may be an indebtedness, contractual obligation or other legally enforceable commitment owed to the third party."). The Agreement obligates United Neurology to purchase insurance on the properties on Athari's behalf, and thus United Neurology entered into the insurance contract (the Policy) with Hartford for the period from August 21, 2008-August 21, 2009.[18]

---

[18] Plaintiffs cite *Painter v. Momentum Energy Corp.*, 271 S.W. 3d 388, 403 (Tex. App.--El Paso 2008, rev. denied)(Property managers are agents, employees or representatives of their respective owners); *Nagle v. GOM Shelf, LLC*, No. Civ. A. V-03-103, 2005 WL 1515439, at *4 (S.D. Tex. 2005)(manager of an offshore platform was the owner's agent and thus entitled to protections of chapter 95), *citing Fisher v. Lee and Chang Partnership*, 16 S.W. 3d 198, 203 (Tex. App.--Houston [1st Dist.] 2000, pet. denied)

_____

This Court observes that the plaintiff in *Fisher* alleges negligence causing personal injury of a worker on a drilling rig against the property owner based on a failure to provide a safe workplace for the contractor or subcontractor. *Painter* deals with a worker killed while working on a drilling platform and whether drilling operations constitute construction of an improvement to real property. Both are specifically grounded in Tex. Civ. Prac. & Rem. Code Ann. Chapter 95, which applies where an employee of an independent contractor is injured as a result of some condition of real property related to actual work he was hired to perform.  Section 95.002(2) expressly

applies only to a claim:

(1) against a property owner, contractor for personal injury, death, or property damage to an owner, a contractor or a subcontractor or an employee of a contractor or subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

Section 95.003 provides,

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to  inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately worn.

These sections are clearly inapplicable to this case, which does

Accordingly Plaintiffs insist that Athari has standing to sue Hartford under Chapters 541 and 542.051 of the Texas Insurance Code. Plaintiffs further contend that Athari qualifies as a "consumer" under the DTPA because through its agent and property manager, United Neurology, Athari sought to acquire the policy of insurance (goods or services that are the basis of this lawsuit). *See Bennett v. Bank United*, 114 S.W. 3d 75 (Tex. App.--Austin 2003)(Bennett's lender, acting on Bennett's behalf, sought to purchase private mortgage insurance on Bennett's home mortgage and qualified as a "consumer" under the DTPA).

### Hartford's Reply (#58)

Hartford insists that Athari is not a creditor beneficiary to the Policy based on the facts and the evidence here. The provision that United Neurology, acting as Athari's agent, requiring United Neurology to obtain insurance, reads, "Owner hereby appoints Manager as his lawful agent and attorney in fact with full authority to do any and all lawful things necessary for the fulfillment of this Agreement, including the following . . . . To secure insurance to the building at all times." Even if this provision imposes a contractual obligation on United Neurology, that obligation is to "secure insurance to the *building*" only, an obligation which United Neurology fulfilled. Athari's distinctly

_____

not deal with personal injury of a worker agent in an unsafe workplace while constructing, repairing, modifying or improving real property.

-38-

different claim here is for alleged damage to its real estate *business*, specifically for lost rentals.  Furthermore, there is no language in the management agreement that imposes on United Neurology an obligation to obtain insurance for Athari's real estate or rental business.  Nor have Plaintiffs produced any evidence to demonstrate that United Neurology intended to confer a particular benefit on Athari as an alleged third party beneficiary for lost rental income claims asserted by Athari.  Nor is there any evidence demonstrating that Hartford intended to confer any third party beneficiary status on Athari.

Plaintiffs cite two provisions in the policy which they claim confer particular benefits on Athari as a third party beneficiary: (1) Special Property Coverage Form at Additional Coverages, A.5.e ("Our payment for physical loss of or physical damage to personal property owned by others will only be for the account of the owners of the property.  We may adjust losses with the owners of the physically lost or physically damaged property other than you.  If we pay owners, such payment will satisfy your claims against us for the owners' property"(#20-1 at p. 45)); and (2) Purposeful Property of Others endorsement (#20-2 at p. 31).  Both provisions address only *personal* property owned by others, and neither can reasonably be interpreted to show an intention to confer a specific benefit on Athari.  Indeed the former does not confer third party beneficiary on anyone, but simply gives Hartford the right to adjust third

party personal property owners' claims with them, not an obligation to do so.  The latter does not state that Hartford will make payment for personal property owned by others to the other owners, but simply states that personal property of others that is in the care, custody or control of the named insured will be made "on replacement cost basis."  #20-2 at p. 31.  In addition coverage under this endorsement is not only restricted to "the Limit of Insurance applicable to Personal Property of Others shown in the Declaration," but the listed limit for coverage for Personal Property of Others is "NO COVERAGE."  *Id.*; #20-1 at p. 10.

### Court's Decision

"Under Texas law, to sue as a third-party beneficiary, a claimant must show (1) the obligation of the third party is fully developed, (2) the contracting parties unmistakably contemplated benefitting the claimant, and (3) the contract vests in the claimant the right to sue to enforce the contract."  *In re Bayer Materialscience, LLC*, 265 S.W. 3d 452, 456 (Tex. App.--Houston [1st Dist.] 2007).  "To qualify as a creditor beneficiary, the maker of the contract . . . must not only have intended to confer a benefit upon the third party . . . but also must have intended for the third-party to have a right to enforce the agreement."  *Id.* at 456-57.  For an obligation to be "fully developed," the contract at issue, here the Policy, must either name the third party as a beneficiary or express that the third party has a right to enforce

-40-

the contract. *Id.* at 457. Whether a contract clearly evidences an intent to bestow a direct benefit to a third party which would permit the third party to enforce the contract is a question of law. *Sun Oil Co. v. Employers Cas.* Co., 550 S.W. 2d 348, 349 (Tex. Civ. App.--Dallas 1977, no writ)("The right of a third-party beneficiary to enforce a contract is a question of substantive law, . . . and even if the policy were deemed to inure to the benefit of an injured third-party, that would not automatically entitle [the third party] to enforce its provisions at this time"). As the Texas Supreme Court opined in *MCI Telecommunications Corp.*, 995 S.W. 2d at 651,

> The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied. Consequently, a presumption exists that parties contracted for themselves unless it "clearly appears" that they intended a third party to benefit from the contract.

All doubts are resolved against third-party-beneficiary status. *Tawes*, 340 S.W. 3d at 425; *Richmont Capital Partners I, LP.*, 168 S.W. 3d at 929.

While Athari demonstrates that United Neurology has a explicit legal obligation to Athari under the Property Management Agreement between Athari and United Neurology to obtain insurance for the building, it does not state that United Neurology had an obligation to obtain insurance for Athari's business and/or lost rentals, which is the basis of Athari's claim. Furthermore Plaintiffs fail

to show that the parties to the insurance contract (Hartford and United Neurology) intended to confer on Athari the right to enforce the Policy. Athari is not named as a beneficiary in the insurance contract nor a loss payee nor an assignee, nor does the Policy state that Athari has a right to enforce it. The presumption against vesting a right of enforcement in a nonsignatory, or, in reverse, the presumption that a party to a contract contracted for its own benefit and therefore did not intend to confer a benefit on a third party, is not rebutted here by Plaintiffs.

Thus Hartford has shown that Athari is not in privity with Hartford, nor a third party beneficiary of the Policy, nor in a special relationship with Hartford, so as a matter of law it has no standing to sue Hartford for contractual or extra-contractual causes of action. Clearly the management agreement does not impose an obligation on United Neurology to obtain insurance for Athari's loss of rental income, which is also not covered by the Policy.

Thus the Court grants Hartford's motion for partial summary judgment of Athari's claims for loss of business rental income.

### Hartford's Motion for Summary Judgment (#48)

### Regarding United Neurology's Claims

The Policy at issue contains the following appraisal clause, #19-2, Certified Copy of Policy No. 61SBAVM1383, at p. 69:

The Appraisal PROPERTY LOSS CONDITION is replaced by the following:

If we and you disagree on the amount of loss (or net income or operating expense, as regards Business Income Coverage), either may make a written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand.  The two appraisers will select an umpire.  If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction.  Each appraiser will state the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding as to the amount of loss.  Each party will
(1) Pay its chosen appraiser; and
(2) Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

(1)  You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Condition; and
(2) We will still retain our right to deny the claim.

Emphasizing the Texas Supreme Court's 2009 ruling in *State Farm Lloyds v. Johnson* that appraisal clauses bind "the parties to have the extent or amount of the loss determined in a particular way,"[19] Hartford contends that its full and timely payment of the appraisal award constitutes compliance with the Policy and renders Plaintiffs' breach of contract claim moot.  *Breshears*, 155 S.W. 3d at 342; *Scalise*, 2013 WL 6835248, at *5.

Hartford also contends that United Neurology did not assert its lost business income claim until the filing of its Designation of Expert Witness, Karl Killian and his expert report on May 27,

---

[19] *Johnson*, 290 S.W. 3d at 886.

2011 (Ex. I at pp. 4-5), for "business income loss and valuation matters (#48, Ex. H),[20] but has never pleaded it,[21] and that the claim is now barred by the four-year statute of limitations for contract suits[22]. Hartford asserts that it cannot be liable for breach of contract for a failure to investigate or to pay that business income loss claim when it had not been asserted. Hartford maintains that under the "legal injury rule," a cause of action accrues when a wrongful act causes the legal injury, even if the injury is not discovered until later.[23] *Kuzniar v. State Farm Lloyds*, 52 S.W. 3d 759, 760 (Tex. App.--San Antonio 2001, rev. denied)(en banc), *citing S.V. v. R.V.*, 933 S.W. 2d 1, 4 (Tex.

---

[20] In his report Killian opined that Athari had lost $430,877 in lost rentals and United Neurology, $52,213 in business income during the ten days the clinic was closed after Hurricane Ike.

[21] Hartford points out that United Neurology filed suit on November 1, 2010 according its Original Petition at ¶ 12 for Hartford's refusal to "pay all amounts due and owing under the Policy for the Claim related to the Properties," reiterated in its First Amended Complaint (#11 at ¶ 9). It did not allege a direct business income loss claim in either.  Its pleadings identify the "Claim" as number CP0008144015 for damage to the buildings, allegedly caused by Hurricane Ike and covered by the Policy.  Not only did neither of these pleadings mention a business income claim of any kind, but such a claim was not raised during the adjustment of the "Claim."

[22] Tex. Civ. Prac. & Rem. Code § 16.051.

[23] Exceptions to the rule are if the cause of action is not recognized because of fraud or fraudulent concealment or if the cause of action is "inherently undiscoverable," i.e., "by nature unlikely to be discovered within the prescribed limitations period despite due diligence.").  *Kuzniar*, 52 S.W. at 760.  The Court finds that Plaintiffs have not alleged, no less shown, that either exception pertains here.

1988).   In the context of an insurance claim, the injury would occur when the insurer unreasonably failed to pay the insured's claim; the *Kuzniar* court of appeals held that if there is no express denial of a claim by the insurer for an accrual date, the legal injury to the insured occurs at the latest when the claim file is closed.   *Id.* at 761 ("The legal injury in this case occurred when State Farm unreasonably failed to pay the Kuzniars' claim, which at the very latest was when the claim file was closed . . . .")[24].   Hartford closed the file on United Neurology's claim on June 2, 2009.   Ex. S, Sadler Declaration at ¶ 3.   The statute of limitations on the claim thus expired on June 2, 2013.

Alternatively, United Neurology failed to provide prompt notice of its direct business income loss, as required by the Policy.   #19-1 at p. 43.   Compliance with an insurance policy's "prompt notice" provision that notice be given "as soon as practicable" is a condition precedent, the breach of which voids policy coverage.   *Broussard v. Lumbermens Mut. Cas. Co.*, 582 S.W. 2d 261, 262 (Tex. App.--Beaumont 1979 and cases cited therein).   If the policy fails to define "prompt," the courts construe it as within a reasonable time after the occurrence, which in turn is

---

[24] *In accord, Sheppard v. Travelers Lloyds of Texas Ins. Co.*, No. 14-08-00248-CV, 2009 WL 3294997, at *4-5 (Tex. App.--Houston [14th Dist.] Oct. 15, 2009, rev. denied)(date the claim file was closed is "an objectively verifiable event that unambiguously demonstrate[s the insurer's] intent not to pay the claim . . . .").

usually a question of fact.  *Ridglea Estate Condominium Ass'n v. Lexington Ins. Co.*, 415 F.3d 474, 479 (5th Cir. 2005), *citing Stonewall Ins. Co. v. Modern Exploration, Inc.*, 757 S.W. 2d 432, 439 (Tex. App.--Dallas 1988).[25]  When the underlying facts are not in dispute, however, it becomes a question of law.  *Broussard*, 582 S.W. 2d at 262.  Hartford argues that there is no factual dispute here:  United Neurology claimed that damage from Hurricane Ike at the two Properties in dispute here occurred on September 13, 2008, reported the claim to Hartford ten days later, on September 23, 2008, and only mentioned a direct loss business income claim on May 27, 2011 when its expert, without supporting documentation,

---

[25] Nevertheless failure to comply with prompt notice does not bar a claim unless the insurer shows that it was prejudiced by that failure to comply.  *Ridglea*, 415 F.3d at 480; *Motiva Enterprises, LLC v. St. Paul Fire and Marine Ins. Co.*, 445 F.3d 381, 386 (5th Cir. 2006).  *See also PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W. 3d 630, 636-27 (Tex. 2008)(holding that insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay."); *Greene v. Farmers Ins. Exchange*, 446 S.W. 3d 761, 767-68 (Tex. 2014)(The prejudice requirement is 'rooted' in contract law and "the principle that one party is excused from performing under a contract only if the other party commits a material breach"; materiality is "determined by factors, including the extent to which the breach deprived the insurer of the benefit it reasonably could have anticipated from full performance by the insured"; "if the insurer receives its reasonably anticipated benefit despite the insured's breach, the breach is immaterial, the insurer is not prejudiced, and the insurer is not excused from performance.").  *See* 46 *Texas Jur. 3d Insurance Contracts and Coverage* § 861 ("The purpose of a proof of loss is to advise the insurer of facts surround the loss for which a claim is being made, to enable an insurer to investigate the circumstances of an accident while the matter is fresh in the minds of the witness, so that it may adequately prepare to adjust or defend any claims that may be asserted against persons covered by its policy.").

reported the value of income purportedly lost due to a ten-day disruption of its clinical practice as $52,213. Even if the expert report is deemed to constitute notice of the new claim, Hartford claims that the nearly three-year delay in providing notice to Hartford is unreasonable as a matter of law. *See, e.g., Nat'l Union Fire Ins. Co. v. Bourn*, 441 S.W. 2d 592, 595 (Tex. Civ. App.--Fort Worth 1969, writ ref'd n.r.e.)("Notice given 44 days after the occurrence giving rise to the claim is, as a matter of law, failure to give written notice 'as soon as practicable' where the delay is totally unexplained and without excuse."); *in accord Watson v. Allstate Texas Lloyds Ins. Co.*, No. Civ. A. H-03-5805, 2005 WL 1607452, at *3 (S.D. Tex. July 5, 2005). Hartford represents that United Neurology has no excuse or justification for its delay in notifying Hartford about the ten-day loss of income; indeed United Neurology could have made the claim on September 23, 2008 when it made its property damage claim. Hartford states that it requested specific supporting documentation from United Neurology for its lost business income claim, but United Neurology did not provide any.

Hartford also maintains that it was prejudiced by this unreasonable delay. The documents it has received are insufficient for its forensic accountant to evaluate the lost business income claim. Moreover Hartford still cannot determine the relationship between the alleged interruption of the clinical practice and any

-47-

physical damage caused by the storm, i.e., the crux of United Neurology's direct business income claim.  Despite requests to United Neurology for supporting documentation, again Hartford has not received any.  Moreover by this late date Hartford can no longer investigate the veracity of the direct business income claim, which is "lost to the history of the building following the storm."  #48 at p. 18.

Thus, maintains Hartford, under either scenario, Hartford is entitled to summary judgment on the direct income loss claim.

Because Hartford's compliance with the Policy by payment of the appraisal award nullified United Neurology's contract claim, the foundation for its whole case, it also nullified United Neurology's extra-contractual claims, including the common law bad faith and fair dealing.  *Scalise*, 2013 WL 6835248, at *6 ("[T]he parties submitted the dispute for resolution through appraisal and Allstate's payment of all covered damages ended the dispute and any bad faith claim arising from it."), *citing Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.*, Civ. A. No. H-09-3828, 2011 WL 3236192, at *8 (S.D. Tex. July 27, 2011)("Because the policy provides the appraisal remedy where parties disagree on the value of the claim, [the insurer] cannot be liable for breach of duty of good faith by invoking that provision to resolve that claim.").  Furthermore there must be a breach of contract for an insured to prove a bad faith claim.  *Republic Ins. C. v. Stoker*. 903 S.W. 2d

338, 341 (Tex. 1995).   "[Where an insurer has fulfilled its obligations under the contract, here because it has paid all covered damages determined by the appraisal, it generally has no unfulfilled duty stemming from the parties special relationship," such as the duty of good faith and fair dealing. *Scalise*, 2013 WL 6835248, at *7.   While there are two exceptions to the rule (where the insurer commits an "extreme act that would cause injury independent of the policy claim and where it fails to timely investigate a claim[26]), neither applies here, insists Hartford.

Also precluded by Hartford's compliance with the appraisal award is United Neurology's several subsections of the Texas Unfair Settlement Practices Act, Texas Ins. Code § 541, *et seq.*, by failing to "attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claims regarding the Properties, even though Defendant Hartford's liability for the Properties under the Policy was reasonably clear."   As noted earlier, the standard for bad faith is the same under section 541 as that for common law bad faith. *Progressive Mut. Ins. v. Boyd*, 177 S.W. 3d 919, 922 (Tex. 2005).   The Texas Supreme Court has ruled that in the absence of a viable section 541 claim, a plaintiff's claim under section 17.46 of the DTPA fails.   *Id.* ("The determination that Boyd's article 21.21 claim is not valid disposes of Boyd's claim under 17.50 of the DTPA, which is also predicated on a violation of article 21.21

---

[26] *Stoker*, 903 S.W. 2d at 341.

of the Insurance Code.").

Finally, Hartford's compliance with the contract in timely paying the appraisal award precludes United Neurology's claim of violation of the Texas Prompt Payment of Claims Act, i.e., Texas Insurance Code § 542, *et seq.*, as a matter of law. *Breshears*, 155 S.W. 3d at 344-45; *Amine v. Liberty Lloyds of Tex. Ins. Co.*, No. 01-06-0396-CV, 2007 WL 2264477, at *4 (Tex. App.--Houston [1st Dist.] Aug. 9, 2007). "[R]elevant authority directs that an insurer commits no prompt payment violation when it submits to the delay inherent in the contractual appraisal process . . . before paying all covered damages determined by that process." *Scalise*, 2013 WL 6835248, at *6, *citing In re Slavonic Mut. Fire Ass'n*, 308 S.W. 3d 556, 563-64 (Tex. App.--Houston [14th Dist.] 2010, no pet.)(noting that the Insurance Code does not expressly provide a deadline for completion of the appraisal process and that "Texas courts considering the issue have concluded that full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law"). There is no disagreement that Hartford's payment was full and timely. Thus Hartford requests the Court to grant its motion for summary judgment.

### United Neurology's Response (#52)

United Neurology observes that the Policy provides coverage for Business Income. #20, Ex. A at p.33, Special Property Coverage

Form, Business Income,[27] o(1):  "We will pay for the actual loss of
Business Income you sustain due to the necessary suspension of you
"operations" during the "period of restoration."  The suspension
must be caused by direct physical loss of or physical damage to
property and the "schedule premises" . . . .).  The Policy defines
"Business Income," *id.* (o)(4)(a), as "(a) Net Income (Net Profit or
Loss before Income taxes) that would have been earned or incurred
if no direct physical loss or physical damage had occurred; and (b)
Continuing normal operating expenses incurred, including payroll."

Regarding the separate issue of pleading such a claim, United
Neurology argues that its Original Petition (Ex. 4 to #52) filed on
September 13, 2010 in state court) and its First Amended Complaint
(#52, Ex. 7), filed on April 5, 2011, sought damages for "every
element of damage allowed by Texas law with respect to the [other]
causes of action mentioned above, including but not limited to
Plaintiffs' actual damages, policy benefits prejudgment interest .
. . ."  On February 23, 2011, Plaintiffs served Defendant with
their first initial disclosures (#52, Ex. 8, at p.5), in which,
United Neurology claims, they disclosed their business income
damage loss:  "Plaintiffs continue to sustain business interruption
and consequential damages."  On May 27, 2011 Plaintiffs
supplemented their disclosures with Killian's expert report showing
the business income and rental income losses, valued at $52,213,

---

[27] Also available at #52, Ex. 9, p. 32.

sustained by Plaintiffs due to the hurricane in the ten-day period
after the storm.  #48, Ex. I.  Plaintiffs contend that contrary to
Hartford's representation, attached to that report they have
provided all documents supporting Killian's report (daily activity
summaries, monthly payments, and procedure count data for the
months before, during and after the closure period) to Hartford.
*Id.*  They deny that Hartford requested specific additional
documents or that those attached to the report were insufficient
for Hartford's experts to evaluate the lost business income claim.

Plaintiffs charge that Hartford ignored or otherwise failed to
investigate Plaintiffs' full coverages, include Business Income
Loss, during the adjustment process and chose to limit its
examination solely to physical damage to the buildings.

Plaintiffs also challenge the validity of the appraisal award,
which did not address the claimed Business Income Loss, on the
grounds that the Umpire (Judge Garcia) exceeded her authority when
she considered issue of mitigation of damages and reduced the award
accordingly.  Plaintiffs reurge their motion to set aside appraisal
award (#40) and reply (#45), which the Court denied (#47).[28]
Plaintiffs also continue to dispute the amount of the award as not
constituting full damages under the Policy.  While they concede
that Hartford has sent checks to them for the amounts in the

---

[28] After reviewing the relevant documents the Court stands by
its Opinion and Order (#47) in rejecting Plaintiffs' argument
that the Umpire exceeded her authority.

appraisal award, they have not tendered them for payment, i.e., they have not "accepted" them.

Citing *Church On the Rock North v. Church Mutual Insurance Co.*, Civ. A. No. 3:10-CV-0975-L, 2013 WL 497879, at *6 (N.D. Tex. Feb. 11, 2012)("Estoppel is an affirmative defense that applies to a contract claim when a party 'accepts a benefit voluntarily and with knowledge of all material facts.'"), Plaintiffs argue that for Hartford to obtain summary judgment on its claim that its timely payment of the appraisal award satisfies the terms of the insurance contract and negates United Neurology's contractual and extra contractual claims, Hartford must, but did not, plead and prove an affirmative defense of estoppel. While failure to plead an affirmative defense may result in waiver of it under Rule 8(c), waiver is not required if the affirmative defense is raised in a manner that does not create unfair surprise and is asserted "at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Rogers v. McDorman*, 521 F.3d 381, 385-86 (5th Cir, 2008), *quoting Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999); *LSREF2 Baron, LLC v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014). To estop Plaintiffs from asserting a contract claim under the Policy because of the appraisal award, Hartford must prove (1) the existence of a binding and enforceable appraisal award, (2) its timely payment of the award, and (3) Plaintiffs' acceptance of that payment. *Blum's Furniture Co., Inc.*

*v. Certain Underwriters at Lloyds London*, 459 Fed. Appx. 366, 367-68 (5th Cir. Jan. 2012)("'[W]hen an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts that payment, the insured is 'estopped by the appraisal award from pursuing a breach of contract claim against the insurer.''"). Plaintiffs note they have persistently challenged the validity of the award, as in their motion to set it aside.   Even if it is valid, not all Plaintiffs' claims, specifically business income loss, were adjudicated for the award and remain unpaid. #52, Ex. 10 (Appraisal Award).

As for Hartford's reliance on *Breshears* and *Scalise*, Plaintiffs argue that the Honorable Sam. A. Lindsay in *Church on the Rock North* rejected the defendant's reliance on these cases in *Church on the Rock North* for several reasons.   In *Breshears* and *Scalise*, the insured's contract and extra-contractual claims were included in matters submitted for appraisal, while in *Church* some claims were paid and resolved before the insurer invoked the appraisal process and the insured alleged that the insurer delayed unreasonably in making pre-appraisal payments for matters not submitted to appraisal and that the insurer misrepresented the type of coverage provided by the Policy.   Because Plaintiffs in this suit bring a business income claim that was not part of the appraisal process or award, *Breshears*  and *Scalise* are irrelevant

and summary judgment should be denied.[29]   Furthermore, Hartford's alternative contention that even if the business claims were timely, the statute of limitations has run and it has been prejudiced by the late notice of that claim, also fails.

Regarding the business income loss claim, Plaintiffs argue that in the adjustment stage, under Texas law the insurer has a common law duty to deal fairly and in good faith with its insured in processing and paying claims. *Republic Ins. Co. v. Stoker*, 903 S.W. 2d 338, 340 (Tex. 1995). Therefore, insist Plaintiffs, an insurer will be liable if it denies a claim when it knew or should have known that it was reasonably clear that the claim was covered. *Universe Life Ins. Co. v. Giles*, 950 S.W. 2d 48, 56 (Tex. 1997). The insurer may also breach its duty of good faith and fair dealing by failing to reasonably investigate claims. *Id.* at 56 n.5.

While Texas courts have not addressed the issue of whether the insurer's duty of good faith and fair dealing includes a duty to reasonably inform its insured about available coverage under the policy, other courts have found it has such a duty. Therefore, they maintain, Hartford, not Plaintiffs, had the responsibility to advise them of their rights to business income loss under the

---

[29] Hartford argues *Church on the Rock North* is inapposite because it held that when some of the insured's claims are resolved outside of the appraisal process, extra-contractual claims on those items may remain pending. Here, insists Hartford, United Neurology's entire insurance claim was resolved in the appraisal process since it never made a direct claim for business income loss.

Policy.

Furthermore, Plaintiffs assert that the Policy, whose language is clear and unambiguous, does not require them to give notice of their Business Income losses, but only notice of physical loss or physical damages. Ex. 9 at 000042. Plaintiffs claim they met this requirement when they gave notice to Hartford about the damage on September 23, 2008. Furthermore they maintain that they timely asserted their business income losses in their First Amended Complaint, filed on April 5, 2011, in the statement that they seek "every element of damage allowed by Texas law with respect to the causes of action . . . , including but not limited to Plaintiffs' actual damages, including consequential damages, policy benefits . . . ." Ex. 7 (instrument #11) at ¶ 26. *See State Farm Lloyd's Ins. Co. v. Ashby AAA Auto Supply Co.*, No. 05-92-01354-CV, 1995 WL 513363 (Tex. App.--Dallas Aug. 28, 1995, writ denied)(lost profits or net profits are elements of damages; "A party must show either a history of profitability or the actual existence of future contracts from which lost profits can be calculated with reasonable certainty. Texas cases permit recovery for lost profits in reliance upon routinely kept business records, so long as the evaluation of the business's decreased profitability is based upon objective facts, figures, and data."). Under Texas law, "business income," or lost profits, are a "consequential damage," not a theory of legal recovery. *South Plains Switching, Ltd. Co. v. BNSF*

-56-

*Ry. Co.*, 255 S.W. 3d 690, 705 (Tex. App.--Amarillo 2008, rev. denied)("The measure of damages for the loss of profit as consequential damages means net profits.  Net profits means what remains in the conduct of a business after deducting from its total receipts all of the expenses incurred in carrying on the business. The lost profits need not be susceptible to exact calculation, but must only be shown to a reasonable certainty.  An award of damages may be based on estimates that are based upon objective facts, figures or data."). See Ex. 8, Plaintiffs' Initial Disclosures at p. 5 ("Plaintiffs continue to sustain business interruption and consequential damages."), filed on Feb. 23, 2011.  They thus maintain that business income was properly asserted in the pleadings as damage resulting from Hurricane Ike.  Hartford's attorney, Martin Sadler, admits that he was aware of the lost business income claim by March 21, 2011, before the First Amended Complaint was filed.  #48, Ex. J, Letter from Sadler to Plaintiffs' counsel dated Apr. 26, 2013.  Plaintiffs contend that if Hartford was uncertain whether business income losses were asserted in the First Amended Complaint or in the Initial Disclosures, it could have sought discovery on damages or filed an appropriate motion, but it did not.  Thus their First Amended Complaint is timely and sufficient to permit the breach of contractual and extra-contractual claims to proceed on business income damages.

Plaintiffs also assert that their business income damages

claim was asserted within the four-year limitations period and that Hartford fails to meet its burden of proof on its affirmative defense.    In breach of insurance contract cases the statute of limitations runs from the denial of the claim.   Tex. Civ. Prac. & Rem. Code § 16.041; *Willoughby v. Metro Lloyds Ins. Co.*, 548 Fed. Appx. 121, 123 (5th Cir. Nov. 29, 2013).   Plaintiffs' First Amended Complaint was timely filed in April 2011, within four years from the September 2008 hurricane.   Alternatively they charge that Hartford has not demonstrated that the statute of limitations has begun to run because there is no evidence that Hartford denied the business income loss claims.   Moreover, even if Hartford's file closing date of June 2, 2009 starts the running of the statute, there are factual issues about whether that act was a denial of the claims.   If Hartford was not aware of the business income claim until March 2011, denial of the claim was not contemplated when the claim file was closed.

Not only, as discussed *supra*, was prompt notice of a business income claim not a policy requirement, but Hartford cannot show prejudice from its purportedly untimely notice because necessary documents to calculate the business income still exist and have been provided.   Hartford relies on *Bourn*, 441 S.W. 2d at 594-95 ("When either a loss or occurrence takes place, written notice shall be given by or on behalf of the insured to the Company or any of its authorized agents as soon as practicable"; holding that a

44-day delay in notifying the insurer was unreasonable under the policy).  Plaintiffs in the instant suit notified Hartford of physical loss when they filed claims in September and November 2008.  Moreover in most cases whether notice was reasonably prompt under a policy is a question of fact, evaluated under a standard of reasonableness, for the jury.  *Flores v. Allstate Texas Lloyd's*, 278 F. Supp. 2d 810, 815 (S.D. Tex. 2003).

Plaintiffs further assert that Hartford has not shown actual prejudice based on the purported untimeliness of the notice.  *East Texas Medical Center Regional Healthcare System v. Lexington Ins. Co.*, No. 6:04-CV-165, 2011 WL 773452, at *5 (E.D. Tex. Feb. 25, 2011, appeal dism'd).  Whether an insurer has suffered prejudice by delayed notice is usually a question of fact.  *Coastal Refining & Marketing, Inc. v. U.S. Fidelity and Guarantee Co.*, 218 S.W. 3d 279, 287 (Tex. App.--Houston [14th Dist.] 2007, rev. denied).  Plaintiffs assert that Hartford is trying to claim prejudice by arguing that their experts seek to use a different methodology than Plaintiffs' expert and is unable to do so because the documents provided by and relied upon by Plaintiff's expert are insufficient.  To show prejudice, Hartford must, but has not, proved that it suffered a materially adverse change in position resulting from the alleged untimeliness of Plaintiffs' notice.  *Trumble Steel Erectors, Inc. v. Moss*, 304 Fed. Appx. 236, 239 (5th Cir. Dec. 15, 2008).  Nor has Hartford made a formal discovery request for

additional materials.   #48, Ex. J.   As noted, recovery for lost profits does not require exact calculation, but only reasonable certainty, and the Supreme Court has not chosen one method for determining them.   Texas allows routinely kept business records to be used in calculating lost profits as long as the evaluation is based on objective fact, figures, and data.   Hartford does not claim that the records used by Plaintiffs' expert failed to meet these criteria.   The request to use a different methodology than Plaintiffs' expert relates to the weight of Plaintiffs' expert analysis, a fact issue that warrants denial of the motion for summary judgment.

### Hartford's Reply (#54)

Hartford replies that Plaintiffs do nothing to rebut the two key issues here:  (a) the appraisal award binds United Neurology to the amount of the loss sustained by its Properties and because this Court affirmed the validity of the appraisal award and because Hartford timely paid the award, United Neurology's claim for breach of contract fails; and (2) because United Neurology never asserted a direct claim for loss of business income, it is now foreclosed from bringing such a claim because the four-year statute of limitations has expired.   Plaintiffs do not dispute these facts but instead argue that Hartford's motion for summary judgment should be denied because United Neurology has not accepted the award payment but instead has continually disputed the validity of the award on

the grounds that Judge Garcia and the other signatory appraiser exceeded their authority by considering the issue of mitigation of damages.

As Hartford points out, and the Court agrees, United Neurology's challenge to the validity of the appraisal reward was overruled when on January 30, 2014, #52, this Court denied United Neurology's motion to set aside the appraisal award. Its refusal to cash the award payment check does not change the binding effect of the appraisal award.

As for the lost business income claim, United Neurology's vague plea to recover consequential damages of lost business income[30] is not a direct claim for contract benefits under the Policy nor a consequence of any act by Hartford. Neither its Original Petition nor its First Amended Complaint states a claim for breach of contract related to business income, which would not be a consequential damage but a direct claim under the Policy for loss caused by Hurricane Ike. Because United Neurology states that it is seeking coverage under the Policy's provision for "actual Business Income sustain[ed] due to the necessary suspension of [United Neurology's] 'operations' during the 'period of restoration'" (#52 at p. 5), it is seeking direct damages, not

---

[30] Hartford notes that *Black's Law Dictionary* at 390 (6th ed. 1990) defines "consequential damages" as those "losses or injuries that are a result of an act but are not direct and immediate." It defines "direct damages" as "damages which arise naturally or ordinarily from breach of contract." *Id.*

-61-

consequential damages, for Hartford's alleged breach of the lost business income portion of the Policy.  Thus the claim that the pleadings seek consequential damages is irrelevant because a lost income claim in this context is not for consequential damages, and United Neurology has not pleaded a direct claim for lost business income.

Moreover, such a claim is barred by the statute of limitations.  Plaintiffs argument that the statute never began to run because there was no denial of the business income claim would mean that such insurance claims would remains open into perpetuity. While the rule that the statute begins to run on denial of a claim is well established, when there is no express denial Texas courts use the date the insurer closed the claim file as the start of the limitations period. *Kuzniar*, 52 S.W. 3d at 760.  Although Hartford did not expressly deny such a claim, by closing the file on June 2, 2013, it expressed its intent not to pay the claim.  United Neurology then had four years, until June 2, 2013, to bring all of its claims against Hartford, but, as discussed, it has not pleaded any causes of action against Hartford for lost business income. Thus the statute of limitations has run.

Alternatively the Policy requires United Neurology to provide Hartford with prompt notice of its loss or damage.  As noted, notice of a claim is a condition precedent to recovering on an insurance policy and breach of it voids policy coverage where the

lack of notice prejudices the insurer. *Broussard*, 582 S.W. 2d at 262.[31]   United Neurology does not deny that it failed to give Hartford prompt notice of its loss of business income claim, but instead cites cases out of this jurisdiction and argues that Hartford, not United Neurology, was responsible for identifying that claim.   Hartford objects that United Neurology, not Hartford, knows whether its clinical practice was disrupted after the hurricane.   In addition, the argument does not accord with either the Policy or Texas law.   Under Texas law, an insured has a duty to read his insurance policy, is responsible for understanding the policy's terms and conditions, and is bound by those policy terms. *Frith v. Guardian Life Ins. Co. of Am.,* 9 F. Supp. 2d 744, 745 (S.D. Tex.)("Under Texas law, an insurance agent has no duty to explain policy terms, and the insured has a duty to read his insurance policy and is bound by the policy terms even if they were not fully explained."); *Philadelphia Indemnity Ins. Co. v. Creative Young Minds, Ltd.*, 679 F. Supp. 2d 739, 748 (N.D. Tex. 2009); *Khoei v. Stonebridge Life Ins. Co.*, Civ. A. No. H-13-2181, 2014 WL 585399, at *7 (S.D. Tex. Feb. 14, 2013).   Texas law imposes a duty to disclose only where a fiduciary or confidential relationship exists.   *Frith*, 9 F. Supp. 3d at 745, *citing Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1004 (5th Cir. 1997).   Texas courts

---

[31] *See also American Teachers Life Ins. Co. v. Brugette*, 728 S.W. 2d 763, 764 (Tex. 1987).

-63-

have refused to impose general fiduciary duties between an insurer and its insured. *Coterill-Jenkins v. Texas Med. Assoc. Health Care Liability Claim Trust*, 383 S.W. 3d 581, 593 n.7 (Tex. App.--Houston [14th Dist.] 2012, rev. denied)("[C]ourts have held that there is no general fiduciary duty between an insurer and its insured), *citing Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W. 3d 85, 96 (Tex. App.--Houston [1st Dist.] 2003, pet. denied).  The insurer also has no duty to gratuitously subject itself to liability before it formally receives notice of a claim. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W. 2d 270, 174 (Tex. 1995)("Until State Farm received notice of the suit, it had no duty to undertake Hubbard's defense."); *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W. 3d 603, 606-08 (Tex. 2008)("[T]he insurer had no duty to inject itself gratuitously into a lawsuit by defending an additional insured who had not requested a defense and who failed to comply with the policy's forwarding conditions"; "Put simply, there is no duty to provide a defense absent a request for coverage.").  Here Hartford had no duty to disclose coverage provisions to United Neurology and no obligation to make business income loss payments until United Neurology requested it to do so.

Although United Neurology asserts that prompt notice of a business income claim is not a policy requirement, but only notice of physical loss or physical damage is a policy requirement, Hartford argues that the Policy must be examined as a whole, giving

effect to each part.  *See, e.g., Truck Ins. Exchange v. Chalfant*, 192 S.W. 3d 81, 816 (Tex. App.--Houston [1st Dist.] 2006)("'Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered.'"), *quoting Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W. 2d 587, 589 (Tex. 1996).    Hartford   describes   United   Neurology's   "isolated interpretation  of  the  Policy's  prompt  notice  provision"  as "mistaken."  The Policy provides coverage first for physical loss and physical damage, while the "SPECIAL PROPERTY COVERAGE FORM" begins with the coverage type:

> **A.   COVERAGE**
>
> We  will  pay  for  direct  physical  loss  of  or physical  damage  to  Covered  Property . . . caused by or resulting from a Covered Cause of Loss.[32]

Coverage for lost business income is provided as "Additional Coverages," found in the "SPECIAL PROPERTY COVERAGE FORM" at **A.5.o(1)**:

> **(1)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration".  The suspension must be caused by direct physical loss or damage to the property . . . caused by or resulting from a Covered Cause of Loss.[33]

Thus the business income loss coverage is clearly an additional

---

[32] #19-1 at p. 24.

[33] *Id.* at p. 33.

coverage available if the insured sustains such a loss and it is an extension of the covered physical loss or physical damage.  Not only is it common sense that an insured who seeks coverage for a loss would advise its carrier of the loss, but the insured's duties after loss include the duty to report a business income loss because it is part of the physical loss or physical damage, as found a **E.3.b.** and **c.** in the "SPECIAL PROPERTY COVERAGE FORM":

> **3.  Duties In The Event of Loss Or Damage**
> \*\*\*
> **b.** Give us prompt notice of the physical loss or physical damage.  Include a description of the property involved.
>
> **c.** As soon as possible, give us a description of how, when and where the physical loss or physical damage occurred.

Because business income losses can only be recovered under the Policy when they are accompanied by physical loss or damage to the buildings or other covered physical property, the prompt notice provision requires United Neurology to give notice of physical loss and physical damage, including its resulting lost business income associated with that physical loss of damage.  United Neurology failed to give Hartford prompt notice of its business income claim, but only mentioned it almost three years after United Neurology filed its building damage claims in September 2008.  That mention is not "prompt notice" as a matter of law.  *Flores*, 278 F. Supp. 2d at 816-20.

Hartford insists it was prejudiced by United Neurology's delay

-66-

in providing notice of the business income loss claim.   Hartford
continues to assert that it still has not received sufficient
documentation to evaluate Killian's expert report, which was sent
to Hartford on May 27, 2011.   Hartford claims that contrary to
United Neurology's assertions, although the report was accompanied
by various calculations and an exhibit listing documents he
reviewed in reaching his conclusion, these supporting documents
were not produced with his report.   Hartford did receive some
documents in 2013, but they were insufficient for calculating the
business interruption loss, and United Neurology's counsel did not
respond to Hartford's request for extra documents.   Hartford claims
it was prejudiced in that it is still unable to determine any nexus
between any physical damage caused by the storm and the claimed
interruption of the clinical practice or investigate whether any
missed procedures were the result of patients deciding to forego
neurological examinations.

     With regard to Hartford's complaint about United Neurology's
failure to provide discovery, the Court must agree with United
Neurology that Hartford could have filed a motion to compel, but
apparently chose not to, so that objection is of questionable
weight.   Nevertheless it is common sense that the passage of so
much time between the hurricane and the first clear and unambiguous
notice of the business income loss claim greatly impedes any
investigation that Hartford might have been able to do on the nexus

between the hurricane and the lost business income in the ten days after the storm and prejudices Hartford.

Finally Hartford reiterates that its compliance with the contract nullifies United Neurology's extra-contractual liability claims. Plaintiff cannot prevail on a bad faith claim without first showing that the insurer breached the insurance contract. *Blum's Furniture*, 459 Fed. Appx. at 368, *citing Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W. 2d 627, 629 (Tex. 1996). The sole recognized exception to this rule is if the insurer "'commit[s] some action, so extreme, that would cause injury independent of the policy claim' or fails 'to timely investigate the insured's claim.'" *Id., quoting Republic Ins. Co. v Stoker*, 903 S.W. 2d at 341. Hartford's compliance with the award means that it has not breached the Policy, and United Neurology does not claim that Hartford committed an extreme act that caused it injury independent of the Policy so its extra-contractual claim fails.

Thus Hartford has fully complied with the terms of the Policy and made timely payment of a binding and enforceable appraisal award, and United Neurology accepted the payment. Therefore United Neurology is estopped from maintaining its breach of contract claim against Hartford. United Neurology's compliance with the Policy also defeats United Neurology's extra-contractual liability claims. United Neurology's claim for lost business income, first asserted in Killian's expert report on May 27, 2011, is barred by the four-

year statute of limitations for contract claims or, alternatively, by United Neurology's failure to give "prompt notice" of the claim. Thus Hartford urges the Court to grant its motion for summary judgment.

## Court's Decision

An insured bears the burden of showing that it made a claim under the insurance policy. *Metro Hospitality Partners, Ltd. v. Lexington Ins. Co.*, ____ F. Supp. 3d ____, 2015 WL 409803, at *16 (S.D. Tex. Jan. 29, 2015), *citing inter alia Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W. 3d 1, 19 (Tex. 2007). With regard to the issue of notice to Hartford regarding United Neurology's claim for loss of business income, the Court finds that United Neurology's references to extremely general and vague statements in the pleadings are not sufficiently specific to give notice to Hartford of such a claim. Moreover, "the prompt-payment statute . . . requires the insured submit a written notice of claim which then triggers the insurer's duty to investigate and acknowledge the claim." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W. 3d 1, 19 (Tex. 2007), *citing* Tex. Ins. Code §§ 542.051 and 542.055. United Neurology fails to submit a demand letter or any written document demonstrating that it submitted a reasonably timely claim for  business-interruption loss incurred during the ten days after the hurricane hit. Moreover Karl Killian's May 27, 2011 expert report on lost business income, identified by Hartford as its first

-69-

clear notice of such a claim, filed more than two years and eight months after the hurricane without explanation for the lengthy delay, clearly as a matter of law breaches the Policy's condition-precedent "prompt notice" provision that notice of a claim be given "as soon as practicable." *Broussard*, 582 S.W. 2d at 262 (Compliance with an insurance policy's "prompt notice" provision that notice be given "as soon as practicable" is a condition precedent, the breach of which voids policy coverage.); *Bourne*, 441 S.W. 2d at 595. Furthermore Hartford has shown that it was prejudiced as a matter of law in that by the time Killian's expert report was filed, in that it was substantially if not entirely deprived of its right and ability to investigate the circumstances of the claimed loss in the manner that it would have liked. *Berkley Regional Ins. Co. v. Phila. Indem. Ins. Co.*, ___ Fed. Appx. _____, 2015 WL 329421, at *6-7 (5th Cir. Jan. 27, 2015), *citing Berkley Regional Ins. Co. v. Phila. Indemnity Ins. Co.* ("*Berkley I*"), 690 F.3d 342, 348-49 (5th Cir. 2012). The Court concludes that Hartford is entitled to summary judgment on United Neurology's claim for lost business income.

Hartford asserts that it fully complied with the terms of the Policy and made timely payment of a binding and enforceable appraisal award, and therefore United Neurology is estopped from maintaining its breach of contract claim against Hartford. "[T]he reason an insured is estopped from maintaining a breach of contract

claim against the insurer after receiving full payment of an
appraisal award is that the very object of the binding appraisal
process is to avoid litigation on the issue of damages and not to
facilitate liability." *Devonshire Real Estate & Asset Management,
LP v. American Ins. Co.*, 2010 WL 4796967 at *16 (N.D. Tex. Sept.
26, 2014), *citing Breshears*, 155 S.W. 3d at 343 (this reasoning
applies with special force where the parties agreed to provide for
a binding appraisal process in their contract).   In *Blum's
Furniture*, 459 Fed. Appx. at 368, the Fifth Circuit set out three
elements to establish an estoppel of a breach of contract claim:
(1) the existence and enforceability of an appraisal award, (2) the
timely payment of the award by the insurer, and (3) acceptance of
the appraisal award by the insured.  *Id.* ("[W]hen an insurer makes
timely payment of a binding and enforceable appraisal award, and
the insured accepts the payment, the insurer is estopped by the
appraisal award from maintaining a breach of contract claim against
[the insurer].")*, citing Franco v. Slavonic Mut. Fire Ins. Ass'n*,
154 S.W. 3d 777, 787 (Tex. App.--Houston [14[th] Dist.] 2004, no
pet.).

The Policy set out the appraisal award procedure invoked
here.[34]  As noted earlier, appraisal clauses in property insurance

---

[34] As indicated *supra*, #19-2, Certified Copy of Policy No.
61SBAVM1383, at p. 69, states:

If we and you disagree on the amount of loss (or net
income or operating expense, as regards Business Income

-71-

policies in Texas provide an extra-judicial method to resolve disputes regarding the amount of loss for a covered claim and bind "the parties to have the extent or amount of the loss determined in a particular way." *In re Universal Underwriters,* 345 S.W. 3d at 406-07; *Breshears*, 155 S.W. 3d at 343-44.  Because the language of a contract is intended to embody the intention of the parties, Texas courts have held that appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable in the absence of fraud, accident or mistake.  *TMM Investments,* 730 F.3d at 471-72; *State Farm Lloyds v. Johnson*, 290 S.W. 3d at 888; *Michels,* 2013 WL 5935067, at *5.  There is a strong public policy favoring enforcement of appraisal clauses and every reasonable

---

Coverage), either may make a written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand.  The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction.  Each appraiser will state the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding as to the amount of loss.  Each party will
(1) Pay its chosen appraiser; and
(2) Bear the other expenses of the appraisal and umpire equally.

    If there is an appraisal:

(1)  You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Condition; and
(2) We will still retain our right to deny the claim.

-72-

presumption is indulged to sustain an award; the burden of proof is on the party seeking to avoid such an award. *Michels*, 2013 WL 5935067, at *5-6.[35]  An award that is substantially in compliance with the insurance policy is presumptively valid and minor discrepancies in the appraisal process or award will not invalidate it. *Id.* at *6, *citing Providence Lloyds Ins. Co. v. Crystal City I.S.D.* 877 S.W. 2d 872, 875 (Tex. App.--San Antonio 1994, no writ); *TMM*, 730 F.3d at 472.   "Every reasonable presumption will be indulged to sustain an appraisal award, and the burden of proof lies on the party seeking to avoid the award." *TMM*, 730 F.3d at 472.  An award will be sustained unless (1) it was made by the appraisers and/or the umpire without authority,[36] (2) it was the result of fraud, accident, or mistake, or (3) the award did not comply with the terms of the contract, which are "in the nature of affirmative defenses." *Id.*; *Toonen v. United Services Automobile Assoc.*, 935 S.W. 2d 937, 940 (Tex. App.--San Antonio 1996, no writ).  The party which raises such an affirmative defense bears

_____

[35] The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court. *Lundstrom v. United Services Auto. Ass'n-CIC*, 192 S.W. 3d 78, 87 (Tex. App.--Houston [14th Dist.] 2006, pet. denied); *TMM*, 730 F.3d at 472.

[36] For example, the umpire is only authorized to act if two appraisers disagree and has no authority otherwise to act.  *TMM*, 730 F.3d at 472.  Here, United Neurology's appraiser disagreed with Hartford's, so Judge Garcia was authorized to to provide the deciding signature.

the burden of raising a material issue of fact on that defense. *Toonen*, *id.*

Here the parties agreed in the contract's appraisal clause to the method extrajudicial method for resolving a dispute over the amount of the insured's loss.  The clause is not ambiguous and neither party argues otherwise.  The independent umpire, Judge Garcia, and Hartford's appraisers satisfied the requirements of the Policy's appraisal process by signing the appraisal award even though United Neurology's did not sign, and thus broke the tie, as authorized by the appraisal clause.  In its motion to set aside appraisal award (#40) United Neurology argued that Hartford's appraiser and the independent umpire exceeded their authority in considering whether Plaintiffs failed to mitigate their damages and in reducing their award accordingly.  The Court rejected their argument, finding that when different kinds of damage occur to different items of property, appraisers do not necessarily exceed their authority in deciding whether loss was caused by the covered events and by non-covered factors such a pre-existing wear and tear, etc., or the extent of the damage caused.  #47.  United Neurology has not claimed, no less shown, that the award was the result of fraud, accident, or mistake.

United Neurology now argues that the third element required to estop its breach of contract claim was not met because it did not accept the payment of the appraisal award tendered to it by

Hartford.   A number of courts have addressed the issue of the insured's rejection of a timely and full payment of the appraisal award amount by the insurer under Texas law and determined that if the appraisal award has been reached in accordance with the terms of the insurance policy and the insurer has timely tendered the full amount awarded by the appraisers, that conduct is legally sufficient to entitle the insurer to summary judgment on the breach-of-contract claim against it.   *See, e.g., Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W. 2d 872, 875-76 (Tex. App.--San Antonio 1994)(holding that the appraisal award was made in substantial compliance with the terms of the contract, was not made without authority, and was not the result of fraud, accident or mistake, and is therefore binding, and that appellee should take nothing on its breach-of-contract claim); *Toonen*, 935 S.W. 2d at 940 (holding that the insurer was entitled to summary judgment on the insured's breach of contract claim because it had paid the appraisal award pursuant to the contract); *Brownlow v. United Services Automobile Assoc.*, No. 13-03-758-CV, 2005 WL 608252, at *2 (Tex. App.--Corpus Christi Mar. 17, 2005)("USAA participated in the appraisal process and tendered the amount awarded by the umpire.  Because USAA complied with the requirements of the contract it cannot be found in breach."); *Caso v. Allstate Texas Lloyds*, Civ. A. No. 7:12-CV-748, 2014 WL 528192, at *5 (S.D. Tex. Feb. 7, 2014)("[T]he award remains both binding and

enforceable until it is set aside, not withstanding Plaintiffs'
rejection of Allstate's tender, an apparently-baseless rejection
for which Plaintiffs have not offered an explanation.")(*citing
Toonen*); *Devonshire Real Estate*, 2014 WL 4796967 ("[S]o long as
there is a binding and enforceable appraisal award and the insurer
timely and full[ly] pays the resulting award, estoppel should apply
regardless of whether the insured actually accepts payment.").
This Court, too, finds that United Neurology and Hartford are in
substantial compliance with the appraisal award clause in the
Policy, that the award is binding and enforceable, and that despite
United Neurology's refusal to accept the payment tendered, it has
failed to show that Hartford breached the contract.[37]

Because United Neurology's breach of contract claim fails, so
does its extra-contractual claims for the common law breach of good
faith and fair dealing, violation of the DTPA, and the Texas

---

[37] United Neurology relies on *Church on the North Rock,* which
required acceptance of the insurer's timely payment to establish
estoppel.  That case is distinguishable from the facts in the
case *sub judice* because *inter alia* in *Church* the appraisal award
was not signed; plaintiffs failed to show that "any two" of the
appraisers or umpire agreed to the award; the policy contained
language that North Church retained the right to bring a legal
action against the insurer if there is an appraisal so there was
a material fact issue regarding whether the parties contractually
agreed to be bound by the appraisal award, which itself stated
twice that it "does not constitute a settlement of this claims.
The above figures are subject to insurance company approval.";
and North Church issued two acknowledgments upon receipt of the
payments stating that the payments "shall not be construed as
full and final release of all claims against" the insurer.  2013
WL 497879 at *7-8.

Insurance Code.  *Amine*, 2007 WL 2264477, at *4; *Breshears*, 155 S.W. 3d at 344.  *See* pages 48-50 of this Opinion and Order.

### Court's Order

For the reasons stated in this Opinion and Order, the Court

ORDERS that Hartford's motion for summary judgment (#20) on Athari's claims and Hartford's motion for summary judgment on United Neurology's claims (#48) are GRANTED.  Because the Court is uncertain if there are any remaining coverage or liability issues, it does not currently enter a final judgment.

**SIGNED** at Houston, Texas, this __31st__ day of __March__ , 2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE